UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH ROSARIO, NOAH ZAHARIA, and OLIVIA SPELL, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>-against-<br><br>ICON BURGER ACQUISITION LLC d/b/a SMASHBURGER,<br><br>     Defendant. | Case No. 2:21-cv-04313-JS-ST<br><br>DECLARATION OF GWEN BOHLENDER |

I, Gwen Bohlender, do hereby swear, affirm, and attest that under the penalties of perjury as follows:

1. I am over the age of 18, and am employed by Icon Burger Acquisition LLC, d/b/a Smashburger ("Smashburger") as the Human Resources Director. I have been employed by Smashburger since November 2012. Accordingly, I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, could and would testify competently thereto.

2. I make this Declaration in support of Smashburger's Motion To Dismiss Or, Alternatively, To Compel The Arbitration of Plaintiff Joseph Rosario's Claims in the above-captioned case.

3. In my role as Smashburger's Human Resources Director, I have been responsible for various personnel, recruiting and onboarding functions. This includes Smashburger's roll-out of an alternative dispute resolution program (the "ADR Program") on or around February 4, 2019.

4. I have knowledge concerning Smashburger's policies, procedures and employment recording keeping practices. I also have knowledge concerning Smashburger's ADR Program, and the Dispute Resolution Procedure & Mutual Binding Arbitration Agreement ("Arbitration

1

Agreement") which was presented to Smashburger's employees and memorializes the terms of the ADR Program. A true and correct copy of that Arbitration Agreement is attached hereto as **Exhibit A**. It is part of Smashburger's regular business practice to keep and maintain these documents.

5. In the fall of 2018, Smashburger's management adopted the ADR Program, and decided to roll-out that program beginning February 2019 as part of the Company's newly updated New Hire Packet. The Arbitration Agreement provides the exclusive means for resolving employment-related claims between Smashburger and its employees.

6. Communications regarding the ADR Program, and restaurant-level management training on the New Hire Packet, began in February 2019. Restaurant managers were informed during this process that it was now Smashburger's general and standard business practice to use the New Hire Packet with newly-hired employees during their onboarding, and that managers were expected to ensure that all contents of the New Hire Packet—including the Arbitration Agreement—were provided and disclosed to, and executed by, those newly hired employees. This was done because it was a condition of employment by Smashburger that all newly hired employees were required to review the Arbitration Agreement and acknowledge their agreement to its terms and provisions.

7. To assist management with the onboarding process, Smashburger included a "Team Member File Maintenance Form" (the "Checklist") at the beginning of the New Hire Packet. A true and correct copy of the Checklist is attached hereto as **Exhibit B**. The Checklist references all of the required onboarding documents newly hired employees are required to execute and/or acknowledge at the time of hire. Contained within the Checklist is an action item titled "Smashburger Arbitration Agreement and Class Action Waiver – sign two copies; retain one in

employee file." Each item on the Checklist requires the manager to initial and date, to indicate that it was completed by the employee.

8. Beginning in February 2019 and continuing through March 2021, the New Hire Packet was made available to restaurant-level managers electronically, in a single but printable file. This was done to ensure that all the accompanying materials and forms—including the Checklist and Arbitration Agreement—were printed and presented in the same way to all newly hired employees. The file also ensured that all the forms and materials were printed in duplicate, to ensure that newly hired employees received their own original copy of the forms and agreements. In March 2021, however, Smashburger began presenting these materials through an electronic onboarding process, in which newly hired employees would acknowledge and agree to the New Hire Packet's contents—including the Arbitration Agreement—through an electronic, instead of physical, signature process.

9. The New Hire Packet, including the Checklist and Arbitration Agreement, was prepared and regularly maintained by Smashburger, and kept in the ordinary course of business. The essential terms of the Arbitration Agreement have remained the same since it was introduced in February 2019.

10. Beginning in February 2019, it was a standard and regular business practice to present the Arbitration Agreement to all newly hired employees, have them review its terms, and then have them sign the Arbitration Agreement to acknowledge their acceptance of the ADR Program.

11. Plaintiff Joseph Rosario ("Mr. Rosario") was hired by Smashburger in December 2019. As such, he was subject to Smashburger's earlier-adopted ADR Program. Mr. Rosario worked at one of Smashburger's Staten Island, New York restaurant locations – Store # 1723.

12. According to Smashburger's records, Mr. Rosario's employment ended in May 2020.

13. Due in part to impacts from the Covid-19 pandemic, Smashburger closed Store # 1723 in or around October 2020. While many of the location's records and personnel documents were transferred to Smashburger's headquarters, some records and documents were lost or misplaced during the closure process.

14. Mr. Rosario's signed Arbitration Agreement and other onboarding documents are among the documents that have not yet been located.

15. However, Mr. Rosario—like all employees hired after February 2019—was told during his onboarding, in accordance with Smashburger's standard policies and practices, that in order to be employed by Smashburger, he had to sign and consent to the Arbitration Agreement and adhere to its terms in resolving any disputes he had with Smashburger or that Smashburger had with him.

16. Based on Smashburger's business records and information and belief, at no time did Mr. Rosario indicate that he did not understand the Arbitration Agreement or the ADR Program in general. At no time did Mr. Rosario explicitly or implicitly express an intention not to be bound by the Arbitration Agreement. By not indicating any confusion or lack of understanding, Mr. Rosario was assumed to have understood and assented to Smashburger's ADR Program, as set forth in the Arbitration Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18 day of March, 2022 at Denver, Colorado.

By: *Gwen Bohlender* (signature)
Gwen Bohlender

4