UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH ROSARIO, NOAH ZAHARIA, and
OLIVIA SPELL, individually and on behalf of all
others similarly situated,

                    Plaintiffs,                    Case No. 2:21-cv-04313-JS-ST

              -against-

ICON BURGER ACQUISITION LLC d/b/a
SMASHBURGER,

                    Defendant.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, ALTERNTIVELY, TO
COMPEL THE ARBITRATION OF JOSEPH ROSARIO'S CLAIMS**

Daniel Gomez-Sanchez
Matthew R. Capobianco
LITTLER MENDELSON, P.C.
290 Broadhollow Road
Suite 305
Melville, NY 11747
dsgomez@littler.com
mcapobianco@littler.com
(631) 247-4713

Attorneys for Defendant,
Icon Burger Acquisition LLC

TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ........................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................ 2

      A.    Plaintiffs' Allegations ........................................................................... 2

      B.    Smashburger's Arbitration Program .................................................... 3

III.  ARGUMENT .................................................................................................... 5

      A.    Plaintiffs Have Failed To Plausibly Allege They Have Standing.......... 5

      B.    The Court Should Also Dismiss The Complaint Because NYLL Section
            191 Does Not Afford A Private Right Of Action For Untimely Paid Full
            Wages .................................................................................................... 11

      C.    Alternatively, Mr. Rosario Must Arbitrate His Claims Against
            Smashburger .......................................................................................... 15

            1.    A Valid Agreement To Arbitrate Exists ..................................... 17

            2.    Mr. Rosario's NYLL Claim Falls Squarely Within The Arbitration
                  Agreement's Scope ...................................................................... 22

            3.    Mr. Rosario Must Individually Arbitrate, Not Collectively Litigate,
                  His NYLL Claim.......................................................................... 23

            4.    The Court Should Dismiss, Not Stay, Mr. Rosario's Claims ................. 24

IV.   CONCLUSION ............................................................................................... 24

TABLE OF AUTHORITIES

Page(s)

**Cases**

*A/S Custodia v. Lessin Int'l, Inc.*,
   503 F.2d 318 (2d Cir. 1974)..................................................................................20

*Accosta v. Lorelei Events Grp.*,
   No. 17-cv-7804, 2022 WL 195514 (S.D.N.Y. Jan. 21, 2022) .................................12

*Adler v. Penn Credit Corp.*,
   No. 19-cv-7084, 2022 WL 744031 (S.D.N.Y. Mar. 11, 2022)..........................9, 11

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228 (2013)................................................................................................23

*In re Am. Express Fin. Advisors Sec. Litig.*,
   672 F.3d 113 (2d Cir. 2011)..............................................................................16, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................6

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011)................................................................................................23

*Barber v. Lincoln Nat'l Life Ins. Co.*,
   260 F. Supp. 3d 855 (W.D. Ky. 2017)......................................................................9

*Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr.*,
   80 N.Y.2d 1031 (N.Y. 1992) ...................................................................................17

*Beautyko, LLC v. FedEx Ground Package Sys.*,
   No. 14-cv-37, 2015 WL 224361 (S.D.N.Y. Jan. 16, 2015) .....................................18

*Beletsis v. Credit Suisse First Boston*,
   No. 011-cv-6266, 2002 WL 2031610 (S.D.N.Y. Sept. 4, 2002) .............................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................6

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*,
   448 F.3d 573 (2d Cir. 2006).....................................................................................21

*Brecher v. Midland Credit Mgmt.*,
   No. 18-cv-3142, 2019 WL 1171476 (E.D.N.Y. Mar. 13, 2019).........................17, 20

*Brown v. St. Paul Travelers Cos.*,
    331 F. App'x 68 (2d Cir. 2009) ...................................................................21

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)....................................................................................16

*Campbell v. Portfolio Recovery Assoc.*,
    No. 21-cv-1322, 2022 WL 657225 (E.D.N.Y. Mar. 4, 2022)....................................8

*Castellanos v. Raymours Furniture Co.*,
    291 F. Supp. 3d 294 (E.D.N.Y. 2018) ..........................................................24

*Castro v. TCA Logistics Corp.*,
    No. 20-cv-2004, 2021 WL 7287305 (E.D.N.Y. Mar. 32, 2021) (Seybert, J.) .........................23

*Chan v. Big Geyser, Inc.*,
    No. 17-cv-6473, 2018 WL 4168967 (S.D.N.Y. Aug. 30, 2018)..............................13

*Chen v. Kyoto Sushi, Inc.*,
    No. 15-cv-7398, 2017 WL 4236556 (E.D.N.Y. Sept. 22, 2017) ............................23

*Chen-Oster v. Goldman, Sachs & Co.*,
    No. 10-cv-6950, 2022 WL 814074 (S.D.N.Y. Mar. 17, 2022)................................3

*Ciccone v. Cavalry Portfolio Servs.*,
    No. 21-cv-2428, 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) (Seybert, J.)........................10

*Collins & Aikman Prods. Co. v. Building Sys.*,
    58 F.3d 16 (2d Cir. 1995)............................................................................22

*Crawford v. Merrill Lynch, Pierce, Fenner & Smith*,
    35 N.Y.2d 291 (N.Y. 1974) ........................................................................18

*Cruz v. TD Bank*,
    22 N.Y.3d 61 (2013) ...................................................................................14

*Daly v. Citigroup, Inc.*,
    939 F.3d 415 (2d Cir. 2019), *cert denied*, 140 S. Ct. 1117 (2020)........................16

*De la Cruz v. Gill Corn Farms*,
    No. 03-cv-1133, 2005 WL 5419056 (S.D.N.Y. Jan. 25, 2005) ................................3

*Dress v. Capital One Bank*,
    No. 19-cv-343, 2019 WL 3451304 (E.D. Va. July 30, 2019)..................................9

*E.E.O.C. v. Waffle House*,
    534 U.S. 279 (2002)..............................................................................17, 22

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ..................................................................................23

*Epstein v. JPMorgan Chase & Co.*,
   No. 13-cv-4744, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ...............................9

*First Options of Chicago v. Kaplan*,
   514 U.S. 938 (1995) ....................................................................................18

*Frank Martz Coach Co. v. Wells Fargo Equip. Fin.*,
   No. 21-cv-795, 2022 WL 798159 (N.D.N.Y. Mar. 16, 2022) ................................7

*Genesco, Inv. v. Takiuchi & Co., Ltd.*,
   815 F.2d 840 (2d Cir. 1987 ......................................................................17, 20

*Gil v. Bensusan*,
   No. 18-cv-10657, 2019 WL 12334706 (S.D.N.Y. 2019) ...................................20

*Gilbert v. Indeed, Inc.*,
   513 F. Supp. 3d 374 (S.D.N.Y. 2021) ........................................................17, 22

*Grant v. Global Aircraft Dispatch*,
   No. 720074/2019, 2021 WL 6777500 (Queens Cnty. Sup. Ct. Apr. 20, 2021) ....................12

*Harty v. West Point Realty*,
   — F.4th —, 2022 WL 815685 (2d Cir. Mar. 18, 2022) ........................................8

*HealthNow New York v. New York*,
   448 F. App'x 79 (2d Cir. 2011) ......................................................................5

*John Hancock Life Ins Co. v. Wilson*,
   254 F.3d 48 (2d Cir. 2001) ..........................................................................18

*Katz v. Cellco P-Ship*,
   794 F.3d 341, 347 (2d Cir. 2015) .............................................................*17, 20*

*Kawa Orthodontics, LLP v. Sec., U.S. Dep't of Treasury*,
   773 F.3d 243 (11th Cir. 2014) ........................................................................9

*Konkur v. Utica Academy of Science Charter School*, -
   N.Y. - 2022 WL 397774, at *3 (N.Y. Feb. 10, 2022) ..........................................13

*League of Am. Theatres & Producers v. Cohen*,
   270 A.D.2d 43 (1st Dep't 2000) ....................................................................17

*Lifrak v. New York City Council*,
   389 F. Supp. 2d 500 (S.D.N.Y. 2005) ..............................................................5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................10

*Maddox v. Bank of New York Mellon Trust Co.,*
    19 F.4th 58 (2d Cir. 2021) ...................................................................7, 8, 9

*Mahon v. Ticor Title Ins. Co.,*
    683 F.3d 59 (2d Cir. 2012) ........................................................................5

*Manigault v. Macy's East, LLC,*
    318 F. App'x 6 (2d Cir 2009) ...................................................................21

*Mastrobuono v. Shearson Lehman Hutton, Inc.,*
    514 U.S. 52 (1995) .................................................................................16

*Missouri Pac. R. Co. v. Tucker,*
    230 U.S. 340 (1913) ...............................................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ...................................................................................16

*Peng v. Uber Tech.,*
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) .......................................................24

*Perry v. Thomas,*
    482 U.S. 483 (1987) ...............................................................................16

*Rosario v. Icon Burger Acquisition LLC,*
    No. 21-cv-4313, 2022 WL 198503 (E.D.N.Y. Jan. 21, 2022) (Seybert, J.) ..................5, 6, 11

*Rosati v. E.M. Wings, LLC,*
    No. 09-cv-4680, 2011 WL 13305366 (E.D.N.Y. Apr. 12, 2011) ..........................................21

*Simeon v. Domino's Pizza, LLC,*
    No. 17-cv-5550, 2019 WL 7882143 (E.D.N.Y. Feb. 6, 2019) ................................17

*Sisters of St. John the Baptist v. Geraghty Constructor, Inc.,*
    67 N.Y.2d 997 (N.Y. 1986) ....................................................................17

*Sorto v. Diversified Maint. Sys.,*
    No. 20-cv-1302, 2020 WL 7693108 .................................................11, 12

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) .............................................................................8, 11

*St. Louis, I.M. & S. Ry. Co. v. Williams,*
    241 U.S. 63 (1919) .................................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)........................................................................................24

*Summers v. Earth Insland Inst.*,
    555 U.S. 488 (2009)..........................................................................................8

*Sutherland v. Ernst & Young LLP*,
    726 F.3d 290 (2d Cir. 2013)....................................................................16, 23

*Sw. Tel. & Tel. Co. v. Danaher*,
    238 U.S. 482 (1915)........................................................................................15

*Taylor v. Fed. Aviation Admin.*,
    351 F. Supp. 3d 97 (D.D.C. 2018)...............................................................9, 10

*Taylor v. Fed. Aviation Admin.*,
    No. 18-cv-35, 2019 WL 3767512 (D.D.C. Aug. 9, 2019)..............................10

*Thole v. U.S. Bank*,
    — U.S. —, 140 S. Ct. 1615 (2020)..................................................................6

*Toure v. Thunder Lube Inc,*,
    No. 17-cv-657, 2019 WL 4805197 at *3 (E.D.N.Y. Sept. 22, 2017).............23

*Thomas v. Public Storage, Inc.*,
    957 F. Supp. 2d 496 (S.D.N.Y. 2013).......................................................18, 20

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021).............................................................................8, 9, 10

*U.S. v. Awadeallah*,
    349 F.3d 42 (2d Cir. 2003).............................................................................14

*U.S. v. Bajakajian*,
    524 U.S. 321 (1998)........................................................................................15

*Vega v. CM & Associates Construction Management, LLC*,
    107 N.Y.S.3d 286 (1st Dep't 2019) ...............................................11, 12, 13, 14

*Warth v. Seldin*,
    422 U.S. 490 (1975)..........................................................................................6

*Weinstein v. Jenny Craig Operations*,
    17 N.Y.S.3d 407 (1st Dep't 2015) .................................................................23

*Zlotnick v. Equifax Info. Servs.*,
    No. 21-cv-7089, 2022 WL 351996 (E.D.N.Y. Feb. 3, 2022) ..........................8

**Statutes**

9 U.S.C. § 2 ...................................................................................................................16, 17

FCRA .....................................................................................................................................9

Federal Arbitration Act .....................................................................................................4, 16

Federal Arbitration Act, 9 U.S.C. §§ 3-4 .............................................................................1

FLSA ....................................................................................................................................12

2010 N.Y. LAWS 564 .........................................................................................................14

New York Labor Law .............................................................................................................2

New York Labor Law Section 191 ................................................................................. *passim*

NYLL Section 191(1)(a) ..................................................................................................2, 12

NYLL Section 191(1)(a)(i) ....................................................................................................3

NYLL Section 191, Section 198 ..........................................................................................15

NYLL Section 195(1) and 195(3) ........................................................................................14

NYLL § 198(1-b) .................................................................................................................14

NYLL Title 6 .......................................................................................................................13

**Other Authorities**

Eighth Amendment ...............................................................................................................15

14th Amendment ..................................................................................................................15

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) .......................................................1

Merriam-Webster's Collegiate Dictionary ...........................................................................13

NY CPLR §§ 7501 ..........................................................................................................17, 18

Defendant Icon Burger Acquisition LLC ("Smashburger") respectfully submits this memorandum of law in support of its motion seeking the dismissal of Plaintiffs' Second Amended Class Action Complaint ("Complaint" or "Compl." located at ECF Doc. No. 26) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, alternatively, entry of an Order compelling Plaintiff Joseph Rosario to individually arbitrate—not litigate—his claims pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3-4.

## I.    PRELIMINARY STATEMENT

The Court should dismiss Plaintiffs' one-count Complaint, which alleges that Smashburger violated New York Labor Law Section 191 by paying them on a bi-weekly, and not weekly, basis. The Court should do so because Plaintiffs have once again failed to plausibly allege they have Article III standing.  Plaintiffs' new allegation of injury suggests that had they been paid weekly, instead of bi-weekly, each of them *could* have invested their wages, or *could* have spent their wages, in some undescribed ways.  But such retroactive speculation does not come close to plausibly describing the sort of concrete and particularized actual injury-in-fact demanded by Article III.  As explained below, courts have widely held that the sort of speculative and hypothetical allegations of a "lost time value of money" injury offered by Plaintiffs here do not satisfy Article III's demands.

The Court should also dismiss Plaintiffs' Complaint because recent case law calls into question whether a private right of action exists under Section 191 for late-but-full wage payments. The Court should also revisit the issue of whether a private right of action is available to Plaintiffs under the Constitutional Avoidance Doctrine because, if they have a private right of action and can claim standing based on their vague and speculative allegations of a "time value of money" injury, then the relief they seek—statutory liquidated damages equal to one-half of their past wages—cannot be granted without running afoul of Due Process and Eighth Amendment'

1

Excessive Fines principles.  This is because such relief would be gravely disproportional to their claimed injury.

If the Court nevertheless concludes that Plaintiffs have standing and a private cause of action, then the Court should nevertheless compel Plaintiff Joseph Rosario to arbitration and dismiss his claims from this case.  Mr. Rosario is subject to an arbitration agreement, which expressly calls for him to individually arbitrate—not representatively litigate—his employment-related New York Labor law claims.

Accordingly, for all of the reasons contained herein, Smashburger requests that the Court grant its motion and dismiss the Complaint in its entirety; or, in the alternative, compel Plaintiff Rosario to individual arbitration.

## II.    FACTUAL BACKGROUND

### A.    PLAINTIFFS' ALLEGATIONS

Plaintiffs are all former Smashburger employees who worked in different positions within Smashburger's New York restaurants (Compl. ¶¶ 11-13).  Plaintiffs do not claim they were denied any pay, or that they were paid incorrect wages; instead, Plaintiffs claim they were "manual workers" within the meaning of the New York Labor Law ("NYLL"), who Smashburger improperly paid "every other week rather than on a weekly basis" in violation of NYLL Section 191(1)(a) (*Id.* ¶ 5).  Plaintiffs do not seek to recover any wage underpayments because there are none.  Instead, they seek to recover "liquidated damages" of up to half of their full pay over the last six years, along with "interest, and attorneys' fees" (*Id.* ¶ 6).[1]

---

[1] NYLL § 191(1-a) provides that manual workers "shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."

Plaintiffs bring this claim not only on their own behalf, but also on behalf of the following putative class of current and former New York employees:

> [A]ll persons who worked as manual workers in their employment for [Smashburger] in the State of New York from six years preceding this Complaint to the date of class notice in this action . . .

(Compl. ¶ 14).[2]

## B.   SMASHBURGER'S ARBITRATION PROGRAM

In the fall of 2018, Smashburger implemented an alternative dispute resolution program for all of its newly hired employees, as well as its current employees. *See* Declaration of Gwen Bohlender, dated March 18, 2022 and filed contemporaneously herewith ("Bohlender Decl.") ¶ 5. The terms of that program were memorialized and set forth in a written document entitled Dispute Resolution Procedure & Mutual Binding Arbitration Agreement (the "Arbitration Agreement"), which was incorporated into Smashburger's New Hire Packet (*Id.* ¶¶ 4-6 & Ex. A, annexed thereto).[3]   The Arbitration Agreement, which was rolled-out to Smashburger's workforce beginning in February 2019, provides the exclusive means for resolving employment-related claims brought by or against current and former Smashburger employees (*See* Ex A. at 1-2).

Every employee hired by Smashburger on or after February 4, 2019—including Plaintiff Joseph Rosario, who was hired in December 2019 (Compl. ¶ 11)—was provided with a copy of the Arbitration Agreement during their respective onboarding sessions (Bohlender Decl. ¶ 10).  In

---

[2] The difficulties of applying this "cart-before-the-horse" class definition remain to be addressed another day, in the event the Court denies this motion to dismiss.  At the present time, Plaintiffs' proposed fail safe class definition "is unworkable" as the "proposed class definition begs the very legal question at issue in this case:" which, if any, of Smashburger's employees should be deemed "manual workers" within the meaning of NYLL Section 191(1)(a)(i)? *De la Cruz v. Gill Corn Farms*, No. 03-cv-1133, 2005 WL 5419056, at *6 (S.D.N.Y. Jan. 25, 2005).  Defining the putative class in terms of "a legal determination that has not yet been made" will undoubtedly render certification, and any accompanying notice process, an "impossible to manage" task. *Id.*  Moreover, a Rule 23 class must "be defined in such a way that anyone within it would have standing." *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-cv-6950, 2022 WL 814074, at *19-20 (S.D.N.Y. Mar. 17, 2022).  But here, Plaintiff's proposed class definition fails to mention, let alone incorporate terms describing, their purported "time value of money" theory of injury-in-fact.

[3] Unless indicated otherwise, all exhibit references are annexed to the Bohlender Decl.

accordance with Smashburger policy, and as a condition of employment, such newly hired employees were also required to sign the Arbitration Agreement during their onboarding sessions (*Id.*).  The Arbitration Agreement establishes a mandatory arbitration program for all "claims, disputes and controversies" between Smashburger and its employees "relating directly or indirectly to [their] employment . . . or the termination thereof," including claims asserted under "the New York Labor Law" (*See* Ex. A at 1, 2-3).  Signed copies of the Arbitration Agreement were provided to Smashburger's employees, while another set of the signed copies were kept and maintained in the ordinary course of Smashburger's business within the employees' respective personnel files (Declaration of Norca Delgado, dated March 18, 2022 and filed contemporaneously herewith ("Delgado Decl.") ¶¶ 6-8; Bohlender Decl. ¶ 7 & Ex. B thereto).

The Arbitration Agreement expressly provides that "the Federal Arbitration Act shall apply when interpreting this Agreement," and that arbitrations are to be "administered by JAMS pursuant to its Employment Arbitration Rules then in effect" (*See* Ex. A at 1,3).  The Arbitration Agreement further provides that "if for any reason JAMS [arbitration] is not available, the arbitration shall be administered by the American Arbitration Association ('AAA') pursuant to the rules of AAA then in effect for employment disputes" (*Id.* at 1).  The Arbitration Agreement also contains a class and collective action waiver clause (*Id.* at 3).  While the Arbitration Agreement generally delegates issues of arbitrability to an arbitrator, and not a court, to resolve, the Arbitration Agreement makes clear that "any question regarding the arbitrability of class, collective, or representative claims shall be decided by a court of law and not an arbitrator" (*Id.*).

During his own new hire onboarding process, and consistent with Smashburger's standard business practices, Mr. Rosario was presented with the company's New Hire Packet, including the Arbitration Agreement (Delgado Decl. ¶ 10).  Mr. Rosario's former manager specifically recalls

conducting his onboarding session, including the process in which she went through the New Hire Packet, and watched Mr. Rosario's sign the New Hire Packet's various forms and disclosures (*Id.*). At no time during his onboarding session, or afterward, did Mr. Rosario indicate a lack of understanding regarding Smashburger's Arbitration Agreement and dispute resolution program. Moreover, Mr. Rosario never indicated an intention not to be bound by the Arbitration Agreement. (*Id.* ¶ 14).

## III.   ARGUMENT

### A.   PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE THEY HAVE STANDING

"It is beyond cavil that constitutional standing imposes a jurisdictional prerequisite to suit." *Lifrak v. New York City Council*, 389 F. Supp. 2d 500, 503 (S.D.N.Y. 2005). The requirement that a plaintiff have standing derives directly from Article III of the Constitution, which "limits the jurisdiction of the federal courts to the resolution of 'cases' and 'controversies.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). Accordingly, "[i]n the absence of standing, a court lacks the requisite subject matter jurisdiction over the case." *HealthNow New York v. New York*, 448 F. App'x 79, 81 (2d Cir. 2011).

To have standing, Article III requires a plaintiff to, among other things, plausibly allege "an 'injury in fact.'" *Rosario v. Icon Burger Acquisition LLC*, No. 21-cv-4313, 2022 WL 198503, at *2 (E.D.N.Y. Jan. 21, 2022) (Seybert, J.) (quoting *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021)). That injury must be concrete, particularized and actual. Conjectural or hypothetical injuries will not suffice. *Id.*

Previously, the Court found that Plaintiffs had failed to sufficiently allege an injury-in-fact in this case from being fully paid on a biweekly basis. *Rosario*, 2022 WL 198503, at *3. While the Court noted "the late payment of wages can constitute a concrete harm sufficient to confer standing on a plaintiff who seeks relief under Sections 191 and 198 of the NYLL," the Court

explained that "absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing." *Id.* Rather than dismiss their complaint, however, the Court directed Plaintiffs to amend their complaint to clarify the nature of their alleged injuries. *Id.*

Plaintiffs amended their complaint on February 21, 2022 (*see* ECF Doc. No. 26). Therein, Plaintiffs each added a single cursory allegation that by being fully paid on a bi-weekly basis, instead of a weekly one, they were injured by being "temporarily deprived of money owed to [them]," such that they "could not invest, earn interest on, or otherwise use these monies that were rightfully [theirs]" (Compl. ¶¶ 11-13). No additional allegations were offered to detail the nature or extent of this claimed "lost time value of money" injury (*see generally id.*).

Plaintiffs' conclusory allegations of a "lost time value of money" injury are too speculative and hypothetical to satisfy Article III's demands. As the Court previously explained, "a plaintiff must plead enough facts to make it plausible that he did indeed suffer the sort of injury that would entitle him to relief." *Rosario*, 2022 WL 198503, at *3 (internal quotation marks omitted). After all, the Supreme Court has repeatedly made clear that a complaint which fails to offer sufficiently concrete allegations of injury to "nudge" a plaintiff's claims "across the line from conceivable to plausible" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Warth v. Seldin*, 422 U.S. 490, 508 (1975) (explaining that a plaintiff "must allege *specific*, *concrete facts* demonstrating [how the defendant's] challenged practices harm[ed] him," and "[a]bsent the necessary allegations of *demonstrable*, *particularized injury*," a complaint must be dismissed) (emphasis added); *Thole v. U.S. Bank*, — U.S. —, 140 S. Ct. 1615, 1622 (2020) (affirming dismissal of complaint because

6

the plaintiffs "did not plausibly and clearly claim" what injury in fact they suffered). *Accord Frank Martz Coach Co. v. Wells Fargo Equip. Fin.*, No. 21-cv-795, 2022 WL 798159, at *3 (N.D.N.Y. Mar. 16, 2022) (allegations that plaintiffs were placed "at risk of default in other commercial obligations in the amount of $20,000,000" by defendant's actions failed to constitute an injury-in-fact sufficient to confer Article III standing because plaintiffs failed to "identif[y] to whom they would default," or "how those obligations constitute $20 million, or how that risk would be so substantial that it would cause them to reasonably incur costs to mitigate th[at] harm").

Nowhere do Plaintiffs allege how they each *would have* invested their wages if received on a weekly instead of bi-weekly basis in a way that *would have* increased the value of those funds. Instead, Plaintiffs offer only conclusory and hypothetical suggestions about what they might have done with such funds—in their own words, Plaintiffs *could have* "invest[ed]" those funds to "earn interest" in some undisclosed manner or, alternatively, they *could have* "use[d] these monies" in undescribed other ways (Compl. ¶¶ 11-13). Such conclusory allegations do not plausibly suggest that Plaintiffs *would have* earned any interest had they been paid on a weekly basis, let alone confirm that Plaintiffs *would have* invested those monies at all. All Plaintiffs' allegations suggest is that had they been paid on a weekly basis, they might have invested the monies, or maybe spent those funds in varied ways, or maybe do nothing at all with those funds (*Id.*). As such, Plaintiffs' allegations simply describe hypothetical plans about what they may or may not have done with their wages had they been paid on a weekly, as opposed to bi-weekly, basis.

Such hypothetical, conclusory allegations do not plausibly describe the sort of particularized and actual injury-in-fact demanded by Article III. Instead, Plaintiffs' allegations simply describe the sort of "nebulous risk of" potential harms that the Second Circuit recently found in *Maddox* cannot "form the basis of Article III standing" because such allegations simply

describe various potential injuries that might have arisen, but which were not specifically alleged to have occurred, with respect to any one particular plaintiff. *Maddox*, 19 F.4th at 65. After all, the Supreme Court has recognized that some statutory violations "may result in no harm," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016), and where there is no "concrete harm" there is "no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021). Listing a range of potential past harms is not the equivalent of alleging "an injury in fact [that is] both concrete *and* particularized." *Spokeo*, 578 U.S. at 340; *accord Harty v. West Point Realty*, — F.4th —, 2022 WL 815685, at *4 (2d Cir. Mar. 18, 2022) (plaintiff's possible courses of action do not constitute Article III injuries-in-fact; such potential injuries only become "actual" and "imminent" ones when accompanied by a "description of [the] concrete plans" the plaintiff planned to take, or would have taken).

What is missing here are allegations of what "specific and concrete plan[s]" each Plaintiff had for use of those funds, and how that Plaintiff was forced to forego those plans because his or her wages were received on a bi-weekly instead of weekly basis. *Summers v. Earth Insland Inst.*, 555 U.S. 488, 495-96 (2009) (allegations "[t]here may be a chance" of injury do not satisfy Article III—"vague" allegations of possible injury do "not support a finding of the 'actual or imminent' injury that our cases require," because deprivation of a "right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing"); *accord Campbell v. Portfolio Recovery Assoc.*, No. 21-cv-1322, 2022 WL 657225, at *1 (E.D.N.Y. Mar. 4, 2022) (plaintiff's allegation that he "was attempting to get financing" but was "negatively impacted" in doing so by defendant's false debt reporting failed to satisfy Article III because there were no accompanying allegations that such an injury ever materialized in a concrete way); *Zlotnick v. Equifax Info. Servs.*, No. 21-cv-7089, 2022 WL 351996, at *2-3 (E.D.N.Y. Feb. 3, 2022) (plaintiff

8

failed to plausibly allege standing in FCRA action because his allegations were couched in terms of "possible" injury, failing to describe any actual "concrete, particularized injury").

Accordingly, while the "lost time value of money" may constitute an injury-in-fact in a general sense, such a theory of injury must be accompanied by allegations of what specific and concrete plans a plaintiff had for the delayed funds. Absent such allegations, courts have widely questioned whether a plaintiff can plausibly establish an Article III injury-in-fact. *See, e.g.*, *Adler v. Penn Credit Corp.*, No. 19-cv-7084, 2022 WL 744031, at *7, 10 (S.D.N.Y. Mar. 11, 2022) ("District courts in the Second Circuit applying *TransUnion* and *Maddox*, tellingly, demand concrete examples of harm;" accordingly, a plaintiff claiming lost use of money-type injuries must allege what "specific plans [he had] to invest his money") (internal quotation marks omitted); *Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 103 (D.D.C. 2018) ("*Taylor I*") (generalized allegations that plaintiff was "deprived … of the use of … funds" were "not the kind of clear allegations of fact necessary to establish an injury in fact, even at the motion to dismiss stage"); *Dress v. Capital One Bank*, No. 19-cv-343, 2019 WL 3451304, at *3 (E.D. Va. July 30, 2019) (same); *Kawa Orthodontics, LLP v. Sec., U.S. Dep't of Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (affirming dismissal of plaintiff's claims for lack of standing because plaintiff's alleged lost "value of the time and resources it expended" failed to be accompanied by allegations of what "specific plans" the plaintiff would have had "to invest its money into an interest-bearing asset"); *Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 862 (W.D. Ky. 2017) (generalized allegation that plaintiff "lost the time value of money" from temporarily being deprived of funds failed to "state[] an injury with sufficient particularity" because that allegation was not accompanied with any detail explaining how that deprivation "affect[ed] the plaintiff in a personal and individual way"); *Epstein v. JPMorgan Chase & Co.*, No. 13-cv-4744, 2014 WL 1133567, at

9

*7, n.6 (S.D.N.Y. Mar. 21, 2014) (generalized claim that plaintiff was injured by being "deprived of the opportunity to use and/or earn interest on" withheld funds "rests on pure speculation" and presents "too slender a reed on which to premise Article III standing").

The District Court for the District of Columbia's decision in *Taylor v. Fed. Aviation Admin.*, No. 18-cv-35, 2019 WL 3767512 (D.D.C. Aug. 9, 2019) ("*Taylor II*"), is instructive. As here, the Court initially found that the plaintiff had failed to articulate an injury in fact and ordered him to amend his complaint. *Taylor I*, 351 F. Supp. 3d at 103. The plaintiff amended his complaint in an attempt to better articulate his "lost time value of money" theory of injury by alleging that he "*could have* invested the [withheld funds], retained the funds, or used the funds for a different purpose," *Taylor II*, 2019 WL 3767512, at *3 (emphasis in original)— *allegations virtually identical to those offered by Plaintiffs here* (*Cf.* Compl. ¶¶ 11-13). But the Court once again dismissed the *Taylor* plaintiff's claims for lack of standing, concluding that his newly added allegations of injury did "nothing to remedy [hi]s insufficient pleading of injury in fact." *Taylor II*, 2019 WL 3767512, at *3. In the Court's view, such allegations remained far too speculative and hypothetical to satisfy Article III's demands because they simply described what the plaintiff "*could have*" done with the funds instead of describing with particularity and certainty how he "*would have* invested the" funds. *Id.* (emphasis in original); *accord Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (an injury-in-fact cannot be "conjectural," "hypothetical," or "speculative").

As the Court recently acknowledged, the Supreme Court's recent *TransUnion* decision "substantially and materially change[s] a district court's analysis of Article III standing in statutory" claim cases like this one, demanding a heightened focus on whether Article III's injury-in-fact requirements have been satisfied. *Ciccone v. Cavalry Portfolio Servs.*, No. 21-cv-2428,

10

2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (Seybert, J.) (internal quotation marks omitted). Accordingly, while it may be true "that the late payment of wages can constitute a concrete harm sufficient to confer standing" based on a "lost time value of money" theory of injury, *Rosario*, 2022 WL 198503, at 3, that sort of injury—like any injury generally—must be plead with certainty and particularity, describing in clear terms how the plaintiff was *actually* affected "in a personal and individual way" and what "specific plans" he or she had for use of the temporarily-deprived funds. *Spokeo*, 578 U.S. at 339; *Adler*, 2022 WL 744031, at *10. Plaintiffs' newly added allegations simply describe how each of them *may* or *may not have* used their wages in various ways had they been paid on a more frequent basis (Compl. ¶¶ 11-13).

Nowhere do the Plaintiffs allege with certainty and specificity what each of them would have done with such funds had they been received on a weekly basis. By failing to do so, each of the Plaintiffs have failed to articulate how being fully paid on a bi-weekly basis affected them "in a[ny] personal and individual way," let alone in actual and concrete terms. *Spokeo*, 578 U.S. at 339. Such allegations are far too speculative and hypothetical to support a finding of Article III injury-in-fact. Therefore, Plaintiffs' Complaint must be dismissed for lack of Article III standing.

B. **THE COURT SHOULD ALSO DISMISS THE COMPLAINT BECAUSE NYLL SECTION 191 DOES NOT AFFORD A PRIVATE RIGHT OF ACTION FOR UNTIMELY PAID FULL WAGES**

Undeniably, the Court has previously concluded here and in other cases that there is a private right of action under NYLL Section 191 for the late payment of full wages, based upon the First Department's decision in *Vega v. CM & Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019). *See, e.g.*, *Rosario*, 2022 WL 198503, at *1, n.2; *Sorto v. Diversified Maint. Sys.*, No. 20-cv-1302, 2020 WL 7693108, at *2 (E.D.N.Y. Dec. 28, 2020 (Seybert, J.). However, Smashburger respectfully requests that the Court revisit that conclusion

and, if the Court believes Plaintiffs have met Article III's demands, dismiss their Complaint because NYLL Section 191 does not provide them with a private right of action to complain about wages paid fully to them on a bi-weekly basis.

The Court should revisit the issue because *Vega* has not been universally adopted or applied by New York's courts. While many of New York's federal courts have concluded that they are "obligated" to follow *Vega's* reasoning (*Sorto*, 2020 WL 7693108, at *2), at least one other New York federal court recently suggested the NYLL does not provide a remedy for late-but-full wage payments. *Accosta v. Lorelei Events Grp.*, No. 17-cv-7804, 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (noting that while the FLSA provides a cause of action for late paid wages, "the NYLL does not appear to provide a similar remedy"). State courts outside the First Department also continued to question whether NYLL Section 191 affords a private right of action to recover wages that were fully paid, albeit on a nonweekly basis, to manual workers. *See, e.g.*, *Grant v. Global Aircraft Dispatch*, No. 720074/2019, 2021 WL 6777500, at *3 (Queens Cnty. Sup. Ct. Apr. 20, 2021) (dismissing NYLL § 191 claim for late-but-full wage payments because "NYLL § 191(1)(a) does not provide for private recovery for violations of its provisions regarding frequency of payment and recordkeeping or for liquidated damages for wages that were previously paid though untimely"). The issue is also presently on appeal to the Second Department in at least one action.

At the same time, the New York Department of Labor's own Labor Standards Complaint Form does not treat a frequency-of-pay claim as an unpaid/underpaid wages claim. Instead, the Department's Complaint Form lists frequency-of-pay concerns as a form of "non-wage complaint," along with employee concerns about an employer's failure to "[p]rovide a day or rest" or "a termination notice," whereas actual wage underpayment clams are dealt with in an entirely

different section of the Complaint Form.  *Compare* NY DOL's Labor Standards Complaint Form (Mar. 2021 ed.) at Part 8 *with id.* at Part 4, available at https://dol.ny.gov/system/ files/documents/2021/03/ls223.pdf.   The Department's separate treatment of frequency-of-pay claims from claims of actual wage under- or non-payment in its standard Complaint Form for employees' use is difficult—if not impossible—to reconcile with the First Department's conclusion in *Vega* that "the late payment of wages" are an "underpayment of wages" within the meaning of Section 198.

Revisiting the issue is also warranted because the First Department's conclusion in *Vega* that a private right of action can be implied under NYLL Section 191 (*see Vega*, 107 N.Y.S.3d at 288-89) cannot be readily reconciled with the Court of Appeals' recent decision in *Konkur v. Utica Academy of Science Charter School*, where the Court of Appeals held that private rights of action cannot be implied under Article 6 of the NYLL, because "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action" and therefore private causes of action should not be inferred under other article 6 sections and provisions (and, NYLL Section 191 is codified within article 6).  *Konkur*, — N.Y. —, 2022 WL 397774, at *3 (N.Y. Feb. 10, 2022).  As explained by one court, in light of the Legislature's 2010 amendment of NYLL Section 198 "to add[] explicit private rights of action for certain claims . . . but not others," private rights of action cannot be inferred into Section 198 of NYLL Title 6, as the Legislature "clearly knew how to" create such rights but chose not to do so except when expressly and unequivocally stated.  *Chan v. Big Geyser, Inc.*, No. 17-cv-6473, 2018 WL 4168967, at *6 (S.D.N.Y. Aug. 30, 2018).  After all, the Court of Appeals has long made clear that courts should "decline[] to recognize a private right of action in instances where [t]he Legislature

13

specifically considered and expressly provided for enforcement mechanisms in the statute itself." *Cruz v. TD Bank*, 22 N.Y.3d 61, 71 (2013) (internal quotation marks omitted).

Indeed, the 2010 amendment to Section 198 explicitly created a private right of action for violations of NYLL Section 195(1) and 195(3). *See* 2010 N.Y. LAWS 564; NYLL § 198(1-b) and (1-d). Though it clearly knew how to create private rights of action, the Legislature conspicuously did not include Section 191 in its express creation of new private rights of action under Section 198. *Cruz*, 22 N.Y.3d at 71.

The Court should also revisit its reliance on *Vega* for another reason. It is axiomatic that courts should construe statutes "to avoid constitutional problems if a viable alternative interpretation exists." *U.S. v. Awadeallah*, 349 F.3d 42, 55 (2d Cir. 2003). To find that a private right of action exists under NYLL Section 191 for claims of late-but-full wage payments, and that standing exists to assert such a claim and recover up to six years of past wages as liquidated damages based simply on a "lost time value of money" theory of injury (and not on any allegation of actual "wage underpayment"), impermissibly invites this case to become mired in questions over whether such remedies comport with Due Process and the Eighth Amendment's Excessive Fines Clause, as the resulting potential liquidated damages recovery will astronomically exceed the actual claimed "time value of money" injuries pleaded by the Plaintiffs themselves. The Supreme Court has long held that Due Process precludes the imposition of statutory penalties in amounts that are "wholly disproportioned to the" harm claimed by a plaintiff. *St. Louis, I.M. & S. Ry. Co. v. Williams*, 241 U.S. 63, 66-67 (1919); *accord Missouri Pac. R. Co. v. Tucker*, 230 U.S. 340, 349, 351 (1913) (finding imposition of $500 statutory liquidated damages award was so "grossly out of proportion to the possible actual damages" of $3.02 in the case "that its enforcement would be nothing short of the taking of property without due process of law, … in contravention

14

of the 14th Amendment"); *Sw. Tel. & Tel. Co. v. Danaher*, 238 U.S. 482, 486-87, 491 (1915) (same, with respect to statutory damage award of $6,300 where actual damages were less than $10). The Supreme Court has also held that the Eighth Amendment's Excessive Fines Clause prohibits the imposition of statutory penalties bearing no reasonable "relationship to the gravity of the offense that [the statute] is designed to punish." *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). Such Due Process and Eighth Amendment concerns will, of course, arise only if the Court concludes that: (A) the bi-weekly payment of full wages to a manual worker constitutes a wage "underpayment" within the meaning of NYLL Section 198 (or that a private right of action can be inferred under NYLL Section 191, Section 198, or both); and (B) Plaintiffs have standing despite the speculative and hypothetical nature of their present injury-related allegations. Dismissing this case for lack of standing, or revisiting the issue of whether Section 191 affords a private right of action for late-but-full wage payments to manual workers, would avoid introducing such grave Constitutional concerns into this case.

For these reasons, Smashburger respectfully requests that the Court revisit its prior decision regarding the availability of a private right of action here and dismiss Plaintiffs' Complaint in its entirety.

### C.   ALTERNATIVELY, MR. ROSARIO MUST ARBITRATE HIS CLAIMS AGAINST SMASHBURGER

If the Court concludes that dismissal of Plaintiffs' claims is not warranted at this time, the Court should nevertheless enter an Order compelling Mr. Rosario to individually arbitrate—not collectively litigate—his claims against Smashburger.[4]

---

[4] Plaintiffs Zaharia and Spell alleged that their employment with Smashburger ended in January 2018 (Compl. ¶¶12-13). Smashburger's alternative dispute resolution program was not rolled out until February 2019 (Bohlender Decl. ¶¶ 6-7).

When presented with a motion to compel arbitration under the FAA, courts must answer two questions: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).

The narrowness of this inquiry is driven by the FAA itself, which was designed by Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 222 (1983). Pursuant to the FAA—which establishes a presumption of arbitrability—"an agreement *in writing* to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added); *accord Perry v. Thomas*, 482 U.S. 483, 489 (1987) (noting the FAA amounts to a "congressional declaration of a liberal federal policy favoring arbitration agreements."); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 295 (2d Cir. 2013) (same). To achieve the FAA's goals, the statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues" falling within their arbitration agreements. *Daly v. Citigroup, Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (internal quotation marks omitted, emphasis in original), *cert denied*, 140 S. Ct. 1117 (2020).

The FAA, of course, applies here because the Arbitration Agreement so states,[5] which is alone sufficient to bring it within the FAA's purview. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43 (2006) (where arbitration agreement expressly provided that the FAA was to govern, the FAA preempted application of state law); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (for state law to apply exclusively to an arbitration

---

[5] *See* Ex. A at 3 ("I further understand that the Federal Arbitration Act shall apply when interpreting this Agreement.").

agreement, the agreement must opt out of the FAA and express that state law applies).  In addition, the FAA applies because the Arbitration Agreement was part of the terms (and a condition of) Mr. Rosario's employment, and therefore affected commerce.  *Simeon v. Domino's Pizza, LLC*, No. 17-cv-5550, 2019 WL 7882143, at *3 (E.D.N.Y. Feb. 6, 2019) (arbitration agreement for pizza delivery drivers, which was a condition of their employment, affected commerce); *see also, e.g.*, *E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.").[6]

### 1.    *A Valid Agreement To Arbitrate Exists*

Under the FAA, "[t]he first step of the Court's inquiry is only a determination of whether there is an agreement to arbitrate any set of claims."  *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 391 (S.D.N.Y. 2021).

To be valid, the FAA requires that the arbitration agreement be in writing; however, the FAA does not require that the writing be signed by the parties.  9 U.S.C. § 2; *accord Genesco, Inv. v. Takiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987) ("[I]t is well-established that a party may be bound by an agreement to arbitrate even absent a signature."), *abrogated on other grounds by*, *Katz v. Cellco P'Ship*, 794 F.3d 341 (2d Cir. 2015); *Brecher v. Midland Credit Mgmt.*, No. 18-cv-3142, 2019 WL 1171476, at *5 (E.D.N.Y. Mar. 13, 2019) ("A signature is not required" to enforce

---

[6] Even if the FAA did not apply, Mr. Rosario's claims would still be subject to mandatory arbitration under New York law, which likewise favors arbitration.  *See Bd. of Educ. of Bloomfield Cent. Sch. Dist. v. Christa Constr.*, 80 N.Y.2d 1031, 1032 (N.Y. 1992) ("This Court has repeatedly held that arbitration is a favored method of dispute resolution in New York, and New York courts interfere as little as possible with the freedom of consenting parties to submit disputes to arbitration.") (quotation omitted*); League of Am. Theatres & Producers v. Cohen*, 270 A.D.2d 43 (1st Dep't 2000) (affirming grant of motion to compel because "arbitration should not be stayed unless the arbitration clause cannot be reasonably interpreted to cover the disputed matter").  Under New York law, courts tasked with determining whether to order arbitration address the following questions: (1) "whether parties have agreed to submit their disputes to arbitration," and (2) "if so, whether the disputes generally come within the scope of their arbitration agreement." *Sisters of St. John the Baptist v. Geraghty Constructor, Inc.*, 67 N.Y.2d 997, 998 (N.Y. 1986).  "The court's inquiry ends . . . where the requisite relationship is established between the subject matter of the dispute and the subject matter of the underlying agreement to arbitrate."  *Id.* at 998.  At that point, the action is exclusively within the province of the arbitrator.  *See* NY CPLR §§ 7501; 7503(a).

an arbitration agreement); *Thomas v. Public Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) ("Plaintiff's signature, however, is not necessary to establish her assent to Defendants' policy regarding the arbitration of employment-related disputes.").  New York law is in accord, requiring only a "written agreement to submit any controversy . . . to arbitration"—there is no requirement that the writing be signed, so long as the parties have otherwise manifested their assent to be bound by arbitration.  N.Y. C.P.L.R. § 7501; *accord Crawford v. Merrill Lynch, Pierce, Fenner & Smith*, 35 N.Y.2d 291, 299 (N.Y. 1974) ("There is no requirement that the writing be signed so long as there is other proof that the parties actually agreed on it.") (partial quotation omitted); *Beautyko, LLC v. FedEx Ground Package Sys.*, No. 14-cv-37, 2015 WL 224361, at *3 (S.D.N.Y. Jan. 16, 2015) ("New York's arbitration statute requires only a written agreement-not a signed, written agreement.").  The focus, in other words, is not on whether there is a copy of the Arbitration Agreement before the Court that was signed by Mr. Rosario, but instead whether under general New York principles of contract law Mr. Rosario and Smashburger can be said to have formed an agreement to arbitrate.  *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995); *John Hancock Life Ins Co. v. Wilson*, 254 F.3d 48, 58 (2d Cir. 2001).

Here, and as a condition of employment, all persons hired by Smashburger on or after February 4, 2019—including Mr. Rosario[7]—were required to complete the company's New Hire Packet before their start of work (Bohlender Decl. ¶¶ 5-6, 10).  Mr. Rosario's manager, Norca Delgado, was responsible for completing all new hire paperwork at the Staten Island restaurant where Mr. Rosario worked, and exclusively used the New Hire Packet rolled-out in February 2019 during that process (Delgado Decl. ¶¶ 3-6).  The New Hire Packet was made available to managers like Ms. Delgado as a single electronic file which, when printed, contained all required new hire

---

[7] Mr. Rosario admits that he was hired by Smashburger in December 2019 (Compl. ¶11).

forms, including the Arbitration Agreement itself (*Id.* ¶ 7; Bohlender Decl. ¶ 8).   To assist managers with the new hire onboarding process, and to ensure all the New Hire Packet's forms and disclosures (including the Arbitration Agreement) were presented to and accepted by newly hired employees, the New Hire Packet also included a "Team Member Maintenance Form" which managers were required to complete during each newly hired employee's onboarding session (Bohlender Decl. at ¶ 7 & Ex. B).   That form served as a checklist for managers to use during the onboarding process, requiring them to initial and date when each form and disclosure—including the Arbitration Agreement—was presented to and accepted by an employee (*Id.*).   Consistent with Smashburger's general business and hiring practices, Ms. Delgado used the New Hire Packet during the onboarding process of all her location's employees, including Mr. Rosario, and Ms. Delgado expressly remembers going over the New Hire Packet with him in the restaurant's dining area before he started of work, responding to his questions about the New Hire Packet's contents and the duties of his position, and ensuring that he completed all the forms within the New Hire Packet itself, and received copies of those completed forms (Delgado Decl. ¶¶ 6-10).

However, and due in part to the impact of the Covid-19 pandemic, the Staten Island location where Mr. Rosario worked was closed by Smashburger in or around October 2020 (Bohlender Decl. ¶ 13; Delgado Decl. ¶ 12).   As a result of the closure, some of the location's personnel records are not presently available (Bohlender Decl. ¶¶ 13-14).   Mr. Rosario's signed Arbitration Agreement is among those records, and therefore cannot be produced at this time (*Id.*; *see also* Delgado Decl. ¶¶ 13-15).

Smashburger's present inability to produce a copy of the Arbitration Agreement signed by Mr. Rosario does not preclude Smashburger from enforcing the Arbitration Agreement against him.   As explained above, an arbitration agreement does not need to be signed to be enforceable.

19

*Genesco*, 815 F.2d at 846; *Brecher*, 2019 WL 1171476, at *5; *Thomas*, 957 F. Supp. 2d at 499.

"The critical issue is not whether the [Arbitration Agreement] was signed by the party sought to

be [c]harged . . . but whether there was a meeting of the minds of the parties as to the essential

terms of the agreement, even though unsigned by one party." *A/S Custodia v. Lessin Int'l, Inc*.,

503 F.2d 318, 320 (2d Cir. 1974).

  The Arbitration Agreement's existence and validity can be presumed here.  As recently

explained by Judge Caproni in a case involving the enforceability of a "missing" signed arbitration

agreement:

> Under New York law, when there is proof of the office procedure followed in a
> regular course of business, and these procedures establish that the required notice
> has been properly provided, a presumption arises that notice was received.  Notice
> may also be presumed when there is evidence that the employer [provided the
> employee with the policy] or when the employee was told that it was their
> responsibility to read the policy.  Once there is a presumption of notice, the mere
> denial of receipt of notice does not rebut that presumption.  Instead, there must be—
> in addition to denial of receipt—some proof that the regular office practice was not
> followed or was carelessly executed so that the presumption of notice becomes
> unreasonable.

*Gil v. Bensusan*, No. 18-cv-10657, 2019 WL 12334706, at *4 (S.D.N.Y. 2019) (citations and

internal quotation marks omitted).  Judge Caproni concluded that the employer in *Gil* was entitled

to enforce the arbitration agreement, even though it could not produce a copy signed by the

plaintiff, because provision of "notice of the [company's] arbitration policy" to the plaintiff could

be presumed through evidence of the employer's "standard office procedure" of providing newly

hired employees with its "Employee Handbook and Consent to Arbitration," along with an oral

"direct[ive to those] employees to read and sign a Consent to Arbitration form as a condition of

employment." *Id.* at * 4.  The same is true here, as Smashburger trained its restaurant managers

on the fact that it was the company's standard business practice to require the completion of all

the New Hire Packet's forms with newly hired employees during the onboarding process,

including the Arbitration Agreement itself, and Mr. Rosario's manager adhered to that directive and even remembers doing so with Mr. Rosario himself.

However, even if Mr. Rosario did not sign the Arbitration Agreement, courts have found that an employee's continued employment, after receiving notice of such a policy and arbitration agreement, manifests an employee's assent to his employer's arbitration program. *Manigault v. Macy's East, LLC*, 318 F. App'x 6, 8 (2d Cir 2009) ("New York, unlike other jurisdictions, has found that continued employment, without more, is sufficient to manifest assent.") (internal citation omitted).  Under New York law, a contract may be formed by words or conduct that demonstrate the party's mutual asset. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 582 (2d Cir. 2006).  Where, as here, an arbitration agreement is a condition of employment, "an employee will be deemed to have accepted an arbitration agreement when she continues to work after the promulgation of the arbitration policy." *Beletsis v. Credit Suisse First Boston*, No. 011-cv-6266, 2002 WL 2031610, at *3 (S.D.N.Y. Sept. 4, 2002); *see also, e.g.*, *Brown v. St. Paul Travelers Cos.*, 331 F. App'x 68, 69 (2d Cir. 2009) (concluding plaintiff was "deemed to have accepted" arbitration policy "by continuing to work after being advised that it was her responsibility to read and understand" that policy) (internal quotation marks omitted); *Rosati v. E.M. Wings, LLC*, No. 09-cv-4680, 2011 WL 13305366, at *4 (E.D.N.Y. Apr. 12, 2011) (same, and collecting cases).

Here, Mr. Rosario was presented with the New Hire Packet, including the Arbitration Agreement, by Ms. Delgado at the time of his hiring in December 2019 (Delgado Decl. ¶¶ 10, 13), and he continued working for Smashburger through May 2020 (Compl. ¶ 11).  As such, he is bound by the provisions of the Arbitration Agreement.

2.      **_Mr. Rosario's NYLL Claim Falls Squarely Within The Arbitration Agreement's Scope_**

The second step in the inquiry requires consideration of whether "the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express*, 672 F.3d at 128.  In determining whether a plaintiff's claims are covered by an arbitration agreement, the threshold inquiry is an analysis of the contract language: "[a]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House*, 534 U.S. 279, 289 (2002).  According, "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," a court must compel arbitration. *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir. 1995) (quotation omitted).

Here, this question is for the arbitrator—and not the Court—to resolve.  This is because the Arbitration Agreement expressly provides that questions regarding its "interpretation or application" should also be decided through arbitration (*See* Ex. A at 3).  In addition, the Arbitration Agreement incorporates the rules of Judicial Arbitration and Mediation Services, Inc. ("JAMS"), or if JAMS arbitration is unavailable, under the rules of the American Arbitration Association ("AAA") (*Id.* at Ex. A, p.1).  The inclusion of such terms, coupled with the adoption of JAMS and AAA rules, requires the arbitrator, and not to the Court, "to determine whether the claims are properly within the scope of the arbitration clause." *Gilbert*, 513 F. Supp. 3d at 410.

But even if that were not the case, Mr. Rosario's claims clearly fall within the Arbitration Agreement's scope.  The Arbitration Agreement provides that arbitration represents "the exclusive means of redress for any and all disputes relating directly or indirectly to or arising from [Mr. Rosario's] employment with the Company," including with respect to "claims involving . . . the New York Labor Law" (*See* Ex. A at 2-3).  And courts routinely find NYLL claims to be suitable

for arbitration.  *See, e.g.*, *Sutherland*, 726 F.3d at 297 (reversing district court's decision to deny motion to compel arbitration of plaintiffs' NYLL claims); *Castro v. TCA Logistics Corp.*, No. 20-cv-2004, 2021 WL 7287305, at *6 (E.D.N.Y. Mar. 32, 2021) (Seybert, J.) (collecting cases, and concluding that "NYLL causes of action are arbitrable" matters) (quoting *Toure v. Thunder Lube Inc.*, No. 17-cv-657, 2019 WL 4805197, at *3 (E.D.N.Y. Sept. 30, 2019); *Chen v. Kyoto Sushi, Inc.,* No. 15-cv-7398, 2017 WL 4236556, at *3 (E.D.N.Y. Sept. 22, 2017) (same).  Therefore, because Mr. Rosario's sole claim in this case arises under the NYLL, and is based upon his employment with Smashburger, Mr. Rosario's claims clearly fall within the scope of the Arbitration Agreement, and therefore must be resolved through arbitration.

### 3.    *Mr. Rosario Must Individually Arbitrate, Not Collectively Litigate, His NYLL Claim*

The Arbitration Agreement contains the following valid class action waiver: "The Company and I expressly intend and agree as follows: (1) that each will forgo pursuing any covered dispute on a class, collective, or representative basis and will not assert class, collective or representative actions claims against each other in arbitration or otherwise.  Employee and the Company shall only submit their own, individual claims in arbitration" (*See* Ex. A at 3).  To ensure its purpose and accomplish its effect, the Arbitration Agreement also divests arbitrators of the authority to entertain claims asserted on a class or collective basis, which instead "shall be decided by a court of law and not an arbitrator" (*Id.*).

On multiple occasions, the Supreme Court has upheld the enforceability of such class and collective waivers in FAA-governed arbitration agreements.  *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 232-34 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-52 (2011).  It is also now well settled, under both federal and New York law, that class action waivers are enforceable.  *Weinstein v.*

*Jenny Craig Operations*, 17 N.Y.S.3d 407, 408 (1st Dep't 2015); *Peng v. Uber Tech.*, 237 F. Supp. 3d 36, 58 (E.D.N.Y. 2017) (collecting cases, and noting that "class action waivers in arbitration agreements are enforceable"); *Castellanos v. Raymours Furniture Co.*, 291 F. Supp. 3d 294, 302 (E.D.N.Y. 2018) (same).

Because "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), and because the Arbitration Agreement contains a valid and enforceable class action waiver, Mr. Rosario cannot proceed with his claims in arbitration on behalf of anyone other than himself.

### 4.    *The Court Should Dismiss, Not Stay, Mr. Rosario's Claims*

Because only Mr. Rosario was employed by Smashburger during the Arbitration Agreement's roll-out period, the claims of Mr Zaharia and Ms. Spell are not subject to arbitration (*see* note 5 *supra*).   As a result, a stay of this proceeding pending arbitration would be inappropriate.  *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).  The Court, therefore, should dismiss Mr. Rosario as a party, and his individual claims from this proceeding.

## IV.    CONCLUSION

For the foregoing reasons, Smashburger respectfully requests that the Court dismiss Plaintiffs' single count Complaint.  However, if the Court believes that dismissal is inappropriate at this time because Plaintiffs have standing and that NYLL Section 191 affords them with a private right of action, the Court should nevertheless enter an Order compelling Plaintiff Rosario to arbitration and dismissing his individual claims from this case.

Dated:  March 21, 2022
       Melville, New York

                         /s/ *Daniel Gomez-Sanchez*
                        Daniel Gomez-Sanchez
                        Matthew R. Capobianco
                        LITTLER MENDELSON, P.C.
                        290 Broadhollow Road
                        Suite 305
                        Melville, NY 11747
                        dsgomez@littler.com
                        mcapobianco@littler.com
                        (631) 247-4713
                        dsgomez@littler.com
                        mcapobianco@littler.com

                        Attorneys for Defendant,
                        Icon Burger Acquisition LLC

4863-8805-1735.3 / 111725-1003