## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JOSEPH ROSARIO, NOAH ZAHARIA, and
OLIVIA SPELL, individually and on behalf of
all others similarly situated,

                Plaintiffs,

      v.

ICON BURGER ACQUISITION LLC d/b/a
SMASHBURGER,

                Defendant.

Case No. 2:21-cv-04313-JS-ST

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARD .................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      PLAINTIFFS HAVE ARTICLE III STANDING ........................................... 2

      A.      Plaintiffs Are Not Required To Allege Specific Investments They Would Have Made If They Were Hypothetically Paid On Time ........................... 2

      B.      The *Maddox* And *TransUnion* Decisions Support A Finding Of Concrete Injury ......................................................................................... 7

            1.      The Late Payment of Wages Is Unlike The Hypothetical Harms At Issue In *Transunion* And *Maddox* .............................. 7

            2.      The New York Legislature's Intent Is "Instructive" .................................. 8

II.     A PRIVATE RIGHT OF ACTION EXISTS UNDER NYLL § 191 ................. 9

      A.      The First Department's Ruling In *Vega* Controls This Action .............................. 9

      B.      Since *Vega*, At Least 11 Courts Have Adopted Its Holding And Zero Have Rejected It ........................................................................................... 10

      C.      The New York State Department Of Labor Has Stated That A Violation Of NYLL § 191 Gives Rise To A Private Right Of Action ........................................................................................................ 13

      D.      NYLL § 191 Provides an Implied Private Right of Action .................................. 15

      E.      Defendant's Consistutionality Argument Is Wrong ............................................ 17

III.    PLAINTIFF ROSARIO WILL DISMISS HIS CLAIM WITHOUT PREJUDICE .................................................................................................. 19

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Accosta v. Lorelei Events Grp. Inc.*,
    2022 WL 195514 (S.D.N.Y. Jan. 21, 2022) ............................................................... 12

*Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel.*
*Hercules & Leo v. Stanley*,
    16 N.Y.S.3d 898 (N.Y. Sup. Ct. 2015) .................................................................... 12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................. 1

*Barber v. Lincoln Nat'l Life Insur. Co.*,
    260 F Supp. 3d 855 (W.D. Ky. May 16, 2017) ......................................................... 4

*Beh v. Cmty. Care Companions Inc.*,
    2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ........................................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................................. 1

*Biggs v. Wilson*,
    1 F.3d 1537 (9th Cir. 1993) ................................................................................. 14, 15

*BMW of North Am., Inc. v. Gore*,
    517 U.S. 559 (1996) ................................................................................................ 18

*Brooks v. Village of Ridgefield Park*,
    185 F.3d 130 (3d Cir. 1999) .................................................................................... 15

*Brooks v. Village of Ridgefield Park*,
    978 F. Supp. 613 (D.N.J. 1997) .......................................................................... 14, 15

*Castanares v. Deutsche Lufthansa AG*,
    2021 WL 811455 (C.D. Cal. Jan. 26, 2021) .............................................................. 3

*Caul v. Petco Animal Supplies, Inc.*,
    2021 WL 4407856 (E.D.NY. Sept. 27, 2021) .............................................. 10, 11, 16

*Caul v. Petco Animal Supplies, Inc.*,
    2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) ............................................... 4, 5, 19

*Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*,
    545 F. Supp. 2d 768 (N.D. Ill. 2008) ...................................................................... 18

*Dep't of Hous. & Urban Dev. v. Rucker*,
    535 U.S. 125 (2002) ................................................................................................ 19

*Duverny v. Hercules Medical P.C.*,
    2020 WL 1033048 (S.D.N.Y. Mar. 3, 2020) ............................................................ 11

*Elhassa v. Hallmark Aviation Servs., L.P.*,
    2022 WL 563264 (S.D.N.Y. Feb. 24, 2022) ....................................................... 11, 16

*Ensminger v. Credit Law Ctr., LLC*,
    2019 WL 4341215 (D. Kan. Sep. 12, 2019) .............................................................. 3

*Epstein v. JPMorgan Chase & Co.*,
    2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ........................................................... 4

*Farina v. Metro. Transp. Auth.*,
    409 F. Supp. 3d 173 (S.D.N.Y. 2019) ...................................................................... 18

*Grant v. Global Aircraft Dispatch*,
    2021 WL 6777500 (Queens Cnty. Sup. Ct. Apr. 20, 2021) ..................................... 12

*Harris v. U.S.*,
    536 U.S. 545 (2002) ................................................................................................ 19

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
    928 F.3d 42 (D.C. Cir. 2019) .................................................................................... 8

*Kawa Orthodontics, LLP v. Sec., U.S. Dep't of Treasury*,
    773 F.3d 243 (11th Cir. 2014) .............................................................................. 5, 6

*Konkur v. Utica Academy of Science Charter School*,
    2022 WL 397774 (2022) ......................................................................................... 16

*Mabe v. Wal-Mart Assocs.*,
    2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) ........................................................ 10

*Mabe v. Wal-Mart Assocs., Inc.*,
    2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) ..................................... 11, 12, 15, 16

*Maddox v. Bank of New York Mellon Trust Co.*,
    19 F.4th 58 (2d Cir. 2021) ......................................................................................... 7

*Martin v. United States*,
    117 Fed. Cl. 611 (2014) .......................................................................................... 15

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
    72 N.Y.2d 166 (1988) .............................................................................................. 13

*MSPA Claims 1, LLC v. Tenet Fl., Inc.*,
 918 F.3d 1312 (2019)....................................................................... 5, 6

*P & L Group v Garfinkel*,
 150 A.D.2d 663 (2d Dep't 1989) ............................................................ 8

*Parker v. Time Warner Entm't Co.*,
 331 F.3d 13 (2nd Cir. 2003)................................................................ 18

*People v. Rivera*,
 5 N.Y.3d 61 (2005) ......................................................................... 12

*People v. Vetri*,
 309 NY 401 (1955) ........................................................................... 8

*Phansalkar v. Andersen Weinroth & Co.*,
 344 F.3d 184 (2d Cir. 2003)................................................................ 12

*Phillips v. Max Finkelstein, Inc.*,
 73 Misc. 3d 1 (N.Y. App. Term. 2021) ..................................................... 11

*Pontes v. Rowan Univ.*,
 2021 WL 4145119 (3d Cir. Sept. 13, 2021) ................................................. 8

*Porsch v. LLR, Inc.*,
 380 F. Supp. 3d 418 (S.D.N.Y. 2019)........................................................ 4

*Rodrigue v. Lowe's Home Centers, LLC*,
 2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021)............................................. 10, 17

*Rojas v. Hi-tech Metals, Inc.*,
 2019 WL 4570161 (Queens Cnty. Sept. 11, 2019) ........................................... 10

*Roth v. Jennings*,
 489 F.3d 499 (2d Cir. 2007)................................................................. 1

*Sav. Bank v. O'Neil*,
 324 U.S. 697 (1945)......................................................................... 15

*Scott v. Whole Foods Market Group, Inc.*,
 2019 WL 1559424 (E.D.N.Y. April 9, 2019) ................................................ 10

*Sorto v. Diversified Maint. Sys., LLC*,
 2020 WL 8413553 (E.D.N.Y. Nov. 15, 2020)................................................. 16

*Sorto v. Diversified Maintenance Systems, LLC*,
 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) ............................................. 9, 11

iv

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................. 2, 8

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) ................................................................................. 17

*Taylor v. Fed. Aviation Admin.*,
    2019 WL 3767512 (D.D.C. Aug. 9, 2019) ............................................... 6

*Thomas v. iStar Financial, Inc.*,
    652 F.3d 141 (2d Cir. 2010) .................................................................... 17

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................................... 7, 8

*U.S. v. Awadellah*,
    349 F.3d 42 (2d Cir. 2003) ...................................................................... 18

*V.S. v. Muhammad*,
    595 F.3d 426 (2d Cir. 2010) .................................................................... 10

*Van v. LLR, Inc.*,
    962 F.3d 1160 (9th Cir. 2020) ....................................................... 2, 3, 5, 6

*Vega v. CM & Assoc. Const. Mgmt., LLC*,
    175 A.D.3d  (N.Y. App. Div. 1st Dep't 2019) ................................... passim

## RULES

Fed. R. Civ. P. 8(a) ....................................................................................... 1

## INTRODUCTION

In its motion to dismiss ("MTD"), Defendant makes the same tired arguments that have been repeatedly rejected by courts since the issuance of the First Department's holding in *Vega v. CM & Assoc. Const. Mgmt., LLC*, 175 A.D.3d 114 (N.Y. App. Div. 1st Dep't 2019). As detailed below, now that Plaintiffs have amended their complaint to allege that they were concretely injured by Defendant's late payment of their compensation, the Court should deny Defendant's MTD and the case should proceed into discovery.

## LEGAL STANDARD

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). The notice pleading standard of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). In fact, "the pleading of additional evidence, beyond what is required to enable the defendant to respond, is not only unnecessary, but in contravention of proper pleading procedure." *Roth*, 489 F.3d at 512 (internal quotations and alteration omitted). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 556).

## ARGUMENT

## I.    PLAINTIFFS HAVE ARTICLE III STANDING

On January 21, 2022, the Court issued an Order (ECF No. 24) (hereinafter, the "Order") directing Plaintiff Rosario to file a Second Amended Complaint in order to "make it plausible that [he] did indeed suffer the sort of injury that would entitle [him] to relief."  Order at 7-8.  While the Court recognized "that tangible harms, like physical and monetary harms, readily qualify as concrete" citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), the Court concluded that "absent factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled, he cannot plausibly claim he suffered a harm sufficiently concrete to establish Article III standing."  Order at 9.

On February 21, 2022, Plaintiffs filed a Second Amended Complaint (ECF No. 26) ("SAC"), adding the precise allegations identified by the Court's Order:  "for half of each biweekly pay period, Mr. Rosario was injured in that he was temporarily deprived of money owed to him, and he could not invest, earn interest on, or otherwise use these monies that were rightfully his. Accordingly, every day that said money was not paid to him in a timely fashion, he lost the time value of that money."  SAC ¶ 11; *see id.* ¶¶ 12-13 (same for Plaintiffs Zaharia and Spell).

### A.    Plaintiffs Are Not Required To Allege Specific Investments They Would Have Made If They Were Hypothetically Paid On Time

Defendant acknowledges that "lost time value of money may constitute an injury-in-fact," but insists that "such a theory of injury must be accompanied by allegations of what specific and concrete plans a plaintiff had for the delayed funds."  MTD at 9.  That is wrong.  As the Ninth Circuit explained, a plaintiff need not "allege specific plans to invest its money into an interest-bearing asset to establish standing based on a temporary deprivation of money."  *Van v. LLR, Inc.*, 962 F.3d 1160, 1165 (9th Cir. 2020).  The Ninth Circuit explained why Defendant's

argument is wrong:

> This argument misstates Van's claimed injury. Van does not assert that she is injured because she lost interest income. She asserts that she is injured because she lost the use of her money. Consistent with our opinion here, although the former injury may be speculative, the latter injury is actual, concrete, and particularized. Interest is simply a way of measuring and remedying Van's injury, not the injury itself.

*Id.* at 1164-65.

The Ninth Circuit's explanation exposes the flaw in Defendant's position. Plaintiffs were injured because they could not use or invest their delayed funds, as the SAC alleges. That is "actual, concrete, and particularized." *Id.* But in arguing that Plaintiffs are required to allege what specific investments they *would have* put the money into *if they had been paid in a timely fashion*, Defendant is asking Plaintiffs to engage in the very sort of speculative and hypothetical exercise that cannot form the basis for standing. That makes no sense. Other courts have not required allegations regarding alternative uses for monies wrongfully withheld beyond alleging that plaintiffs were deprived from using their money and lost its time value. *See Ensminger v. Credit Law Ctr., LLC*, 2019 WL 4341215, at *4 (D. Kan. Sep. 12, 2019) (finding the "plaintiff suffered a concrete financial injury if he was deprived the use of his money" where "plaintiff has specifically alleged … that he suffered an injury in the form of the lost time value of money"); *Castanares v. Deutsche Lufthansa AG*, 2021 WL 811455, at *3 (C.D. Cal. Jan. 26, 2021) ("Plaintiffs allege that Lufthansa breached the Conditions of Carriage by failing to refund their purchase within a reasonable period of time and that this breach resulted in Plaintiffs' loss of the time value and use of their money. (FAC ¶ 12). These facts alleging economic harm suffice to demonstrate that Plaintiffs suffered a 'concrete,' 'real and not abstract' injury").

Notably, in *Caul*, a decision on which the Court relied in its Order, the defendant moved for Judge Kovner to certify her decision for interlocutory appeal, arguing that she erred in finding

Article III standing because the "plaintiff did not allege a lost time value of money injury in her complaint." 2021 WL 6805889, at *2 (E.D.N.Y. Dec. 22, 2021) ("*Caul II*"). But the court rejected this argument because "the complaint alleges the facts necessary to establish the plaintiff suffered that injury" and "[t]hose allegations are adequate to plead that she was deprived of the time value of her money during periods in which payment was illegally delayed." *Id.* Similarly, in *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019), also cited in the Court's Order, Judge Cote likewise found that "temporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing." In both *Caul* and *Porsch*, the plaintiffs did not allege specific investments they had planned for the delayed funds, as Defendant incorrectly suggests is mandatory.[1]

The cases cited by Defendant also do not support its contentions. In *Epstein v. JPMorgan Chase & Co.*, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014), the court recognized that the "Plaintiff could seek to premise standing on a damages theory that he was deprived of the opportunity to use and/or earn interest" but found that he did "not make this claim in his papers and the Court will not make arguments for him." *Id.* at *7, n.6. Similarly, in *Barber v. Lincoln Nat'l Life Insur. Co.*, 260 F Supp. 3d 855 (W.D. Ky. May 16, 2017), the court noted that it could "be implied by the nature of [the] allegations that, by having benefits withheld monthly, [the plaintiff] lost the opportunity to grow that money through investment" but dismissed for lack of standing because "the Court cannot find injury via implication." *Id.* at 862. Here, unlike *Epstein* and *Barber*, Plaintiffs neither ask the Court to make the argument for them nor to find it via implication. Instead, Plaintiffs expressly allege they were "injured in that [they were] deprived of money owed

---

[1] Copies of the operative complaints from both cases are attached as Exhibits 1 and 2 to the Declaration of Yitzchak Kopel ("Kopel Decl."), filed herewith.

to [them], and [they] could not invest, earn interest on, or otherwise use these monies that were rightfully [theirs]. Accordingly, every day that said money was not paid to [them] in a timely fashion, [they] lost the time value of that money." SAC ¶¶ 11-13.

Likewise, in *Kawa Orthodontics, LLP v. Sec., U.S. Dep't of Treasury*, 773 F.3d 243 (11th Cir. 2014), the court acknowledged that "lost interest" on funds expended might have counted as a concrete injury but found that "Kawa's complaint does not mention the word interest" and therefore refused to consider that as a basis for standing. *Id.* at 246. Here, by contrast, Plaintiffs allege they lost the opportunity to "earn interest on" the moneys paid too late. Moreover, to the extent that *Kawa* could be read to hold that an allegation of a plaintiff losing the time value of money is insufficient by itself to confer standing, that is inconsistent with the Eleventh Circuit's subsequent holding in *MSPA Claims 1, LLC v. Tenet Fl., Inc.*, 918 F.3d 1312, 1318 (2019) ("The inability to have and use money to which a party is entitled is a concrete injury. FHCP's harm cannot be remedied by simply receiving the amount owed – it requires something more to compensate for the lost time, like interest."). And as the Ninth Circuit noted in its analysis of the Eleventh Circuit's position, the *MSPA* decision reached this conclusion even absent allegations as to how the money *would have been used*:

> To the extent the Eleventh Circuit's decision in *Kawa Orthodontics, LLP v. Secretary, U.S. Department of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014), suggests that a plaintiff must allege "specific plans to invest its money into an interest-bearing asset" to establish standing based on a temporary deprivation of money, we respectfully decline to follow it. We note that the Eleventh Circuit did not mention those types of allegations in its subsequent decision in *MSPA Claims 1*, which recognized standing based on the lost use of money.

*Van*, 962 F.3d at 1165; *see also Caul II*, 2021 WL 6805889, at *2 (finding *Kawa* unpersuasive to show a lack of standing under NYLL 191 because "the Eleventh Circuit subsequently recognized

that the lost use of money can in fact support standing") (citing *MSPA*, 918 F.3d at 318).[2]

Finally, *Taylor v. Fed. Aviation Admin.*, 2019 WL 3767512 (D.D.C. Aug. 9, 2019) involved a $5 registration fee collected by the Federal Aviation Commission before it was lawfully due. The court held that "[t]he mere lost use of a registration fee at first improperly collected but then validly reinstated, without more, in not sufficiently concrete to constitute a cognizable injury in fact." *Id.* at *3. But *Taylor* is not persuasive in this context for several reasons. As a practical matter, temporary loss of use of $5 is not remotely comparable to temporary loss of use of half of someone's paycheck. A temporary loss of $5 is unlikely to prevent someone from purchasing goods or services, and it is similarly unusual for someone to even bother depositing such a small sum of money into an interest-bearing account. Not so with an entire week's pay. Moreover, *Taylor* relies on the outdated holding from *Kawa*, which was abrogated in principle by the Eleventh Circuit's subsequent holding in *MSPA*, as described above. To the extent that Defendant suggests that *Taylor* should be read to indicate that a specific description of which investments and/or uses the money would have gone to, such a holding would be contrary to the Ninth and Eleventh Circuit's holdings in *Van* and *MSPA*, as well as contrary to Judge Kovner and Judge Cote's in-circuit *Caul* and *Porsch* decisions, among many others. It is therefore inapplicable and unpersuasive.

---

[2] Although the *Kawa* decision mentions that there were no allegations of "specific plans to invest its money into an interest bearing asset," this was dicta, given that the complaint at issue did "not mention the word interest" at all. 773 F.3d at 246. This decision does not evince an intent by the Eleventh Circuit to suggest that this is an actual pleading requirement to allege standing. Regardless, this dicta clearly does not represent the Eleventh Circuit's current viewpoint on this issue, given that it is inconsistent with its later holding in *MSPA*.

**B.      The *Maddox* And *TransUnion* Decisions Support A Finding Of Concrete Injury**

As described below, contrary to Defendant's arguments, the *Maddox* and *TransUnion* decisions support a finding of concrete injury in this case.

**1.      The Late Payment of Wages Is Unlike The Hypothetical Harms At Issue In *Transunion* And *Maddox***

The harm Plaintiffs allege here—the loss use of money—stands in stark contrast to the hypothetical harms confronted in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58 (2d Cir. 2021). In *TransUnion*, the plaintiffs' "credit files, which were maintained by TransUnion, contained misleading OFAC alerts." *Id.* at 2209. However, the plaintiffs could not demonstrate that "the inaccurate OFAC alerts in [plaintiffs'] TransUnion credit files were ever provided to third parties or caused a denial of credit" or "that the 6,332 class members even knew that there were OFAC alerts in their internal TransUnion credit files." *Id.* at 2211-12. Thus, it was merely a risk of future harm that never materialized, which was not sufficiently concrete. *Id.* Similarly, in *Maddox*, the plaintiffs alleged the defendant violated New York's mortgage-satisfaction-recording statutes by failing to record their satisfaction of a mortgage loan until nearly one year after it was fully paid. *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 60 (2d Cir. 2021). However, although "the Maddoxes contend[ed] the Bank's delay adversely affected their credit during that time, making it difficult to obtain financing had they needed it in an emergency or for a new home … it is not alleged that this purported risk materialized," and thus could not give rise to Article III standing. *Id.* at 65.

Here, it cannot be disputed that Plaintiffs lost the time value of the money owed to them. *See* SAC ¶¶ 11-13. It was not hypothetical, it *did* materialize, and it constitutes concrete harm sufficient to confer standing. *See Pontes v. Rowan Univ.*, 2021 WL 4145119, at *4, n.5 (3d Cir.

Sept. 13, 2021) ("In fact, several sister circuits have held that temporary loss of use of money is itself a sufficiently concrete injury to establish standing.") (emphasis added); *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 928 F.3d 42, 66 (D.C. Cir. 2019) ("The delay in those Plaintiffs' receipt of their refunds, and the forgone time value of that money, is an actual, tangible pecuniary injury.").

## 2. The New York Legislature's Intent Is "Instructive"

In *TransUnion*, the Supreme Court explained, "[i]n determining whether a harm is sufficiently concrete to qualify as an injury in fact, the Court in *Spokeo* said that Congress's views may be 'instructive.'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) (citing *Spokeo*, 578 U.S. at 341). To that end, it is important to examine New York's legislative intent behind NYLL §§ 191, "which is to protect workers who are generally 'dependent upon their wages for sustenance' … and section 198, which was enacted to deter abuses and violations of the labor laws[.]" *Vega*, 175 A.D.3d at 1146 (citing *People v. Vetri*, 309 NY 401, 405 (1955) and *P & L Group v Garfinkel*, 150 AD2d 663, 664 (2d Dep't 1989) (section 198 "reflect(s) a strong legislative policy aimed at protecting an employee's right to wages earned")).

Against this backdrop, it is clear the New York Legislature enacted NYLL § 191 to make sure the poorest among us would have access to wages in a timely manner, thereby demonstrating its intent to address a harm it deems concrete. This was not some lofty and abstract policy goal, it was specifically enacted so that financially disadvantaged persons would have timely access to their pay, in particular because they are less likely to have financial reserves to carry them until their next paycheck. This evinces an understanding on the part of the New York Legislature that manual workers are concretely injured when they receive payment in an untimely fashion. There is no need to specify which groceries, rent payments, car bills, or saving accounts Plaintiffs hypothetically would have put the money towards if they were paid in a timely fashion.

However, should the Court agree with Defendant that greater specificity in terms of Plaintiffs' plans for this wrongly withheld compensation is required, Plaintiffs respectfully request the opportunity to provide this granular level of detail in an Amended Complaint.

## II.    A PRIVATE RIGHT OF ACTION EXISTS UNDER NYLL § 191

Defendant argues that there is no private right of action under NYLL § 191. Defendant is wrong, and its argument has been rejected repeatedly, including by this Court in *Sorto v. Diversified Maintenance Systems, LLC*, 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) (Seybert, J.). Nothing has changed since the Court's decision in *Sorto* that warrants departure from its prior ruling.

### A.    The First Department's Ruling In *Vega* Controls This Action

In *Vega v. CM & Assoc. Const. Mgmt., LLC*, New York's Appellate Division for the First Department held that "Labor Law § 198 (1-a) expressly provides a private right of action for a violation of Labor Law § 191." 175 A.D.3d 114, 1146 (N.Y. App. Div. 1st Dep't 2019). The First Department also held that "even if Labor Law § 198 does not expressly authorize a private action for violation of the requirements of Labor Law § 191, a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* Thus, the First Department held that a private cause of action exists for violations of NYLL § 191 for two independent reasons.

The *Vega* decision constitutes guidance from the highest state court to address this issue to date. Accordingly, because there is no case law from the Court of Appeals on this issue, this Court is bound the holding of the New York's First Department in *Vega* unless there is "persuasive evidence" that the Court of Appeals would hold otherwise. *See V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (federal courts are "bound to apply the law as interpreted by a state's

intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion"). But no such "persuasive evidence" exists. The *Vega* decision was unanimously issued by all four judges sitting on the First Department's panel without any dissent. And since the issuance of the *Vega* decision, no federal or state court has rejected its holding. This Court should reject Defendant's invitation to be the sole court to do so.

**B.     Since *Vega*, At Least 11 Courts Have Adopted Its Holding And Zero Have Rejected It**

"Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law … and defendants present no persuasive reason to do otherwise." *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021); *see also Caul*, 2021 WL 4407856, at *2 ("Section 191 permits a manual worker to bring a civil action for delayed payment of wages—even if the wages have subsequently been paid."); *Quintanilla v. Kabco Pharm., Inc., et al.*, Case No. 2:19-cv-06752-PKC, ECF No. 18 (E.D.N.Y.) (June 30, 2020 Minute Entry) (rejecting argument that plaintiff did not have private right of action to pursue Section 191 claim "in light of the *Vega* decision"); *Rojas v. Hi-tech Metals, Inc.*, 2019 WL 4570161, at *4 (Queens Cnty. Sept. 11, 2019) ("In light of the sentiments set forth in *Gottlieb* by the Court of Appeals and the holding in *Vega*[,] Defendant's motion to dismiss Plaintiff's NYLL §§ 191(1)(a) and 198 (1-a) claims is denied."); *Scott v. Whole Foods Market Group, Inc.*, 2019 WL 1559424, at *4 (E.D.N.Y. April 9, 2019) ("The discretionary nature of the Commissioner's authority coupled with the references to employee actions in § 198 compels the conclusion that a private action under § 191 is consistent with the legislative scheme."); *Mabe v. Wal-Mart Assocs.*, 2021 WL 1062566, at *4 (N.D.N.Y. Mar. 18, 2021) (holding that plaintiff had a private right of action because "the First Department's decision in *Vega* is directly on point"); *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *8 (N.D.N.Y. Mar. 24, 2022) ("[T]he Court is not convinced

that the New York Court of Appeals would reach conclusions different than those expressed in *Vega*. … the Court finds that under *Vega*, Plaintiff presents a legally plausible claim in the First Cause of Action."); *Duverny v. Hercules Medical P.C.*, 2020 WL 1033048, at *5-6 (S.D.N.Y. Mar. 3, 2020) (following *Vega*, and denying defendant's motion for summary judgment as to plaintiff's Section 191 claim, noting that "[a] plaintiff's entitlement to statutory damages pursuant to § 198(1-a) survives even if the employer pays the employee's base wages prior to the commencement of a civil action"); *Sorto v. Diversified Maintenance Systems, LLC*, 2020 WL 7693108, at *3 (E.D.N.Y. Dec. 28, 2020) (Seybert, J.) ("Accordingly, the Defendant's objections are OVERRULED … permitting a private right of action is appropriate.") (internal quotation omitted); *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (N.Y. App. Term. 2021) (agreeing with *Vega* "that a private right of action exists to enforce the rights established under section 198"); *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264, at *2 (S.D.N.Y. Feb. 24, 2022) ("The New York Appellate Division First Department has held that the New York Labor Law permits employees to seek liquidated damages for the untimely payment of wages even if the wages are no longer past due, *see Vega v. CM & Assoc. Constr. Mgt., LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), and as Judge Kovner concluded just months ago, [s]ince *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law, *Caul*, 2021 WL 4407856, at *3."); *Beh v. Cmty. Care Companions Inc.*, 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) (citing *Sorto* and *Duverny*, and holding [f]or these reasons, the Court concludes that there is a private right of action for violations of NYLL § 191.").

"Thus, the case authority directly addressing the issue raised in the First Cause of Action is not unsettled, and therefore there appears to be no apparent reason to determine how the New

York State Court of Appeals would decide the issues addressed in *Vega*." *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) (citing *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 199 (2d Cir. 2003) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.")).

Defendant argues that two other courts have disagreed with *Vega*. See MTD at 12 (citing *Accosta v. Lorelei Events Grp. Inc.*, 2022 WL 195514, at *5 (S.D.N.Y. Jan. 21, 2022) and *Grant v. Global Aircraft Dispatch*, 2021 WL 6777500, at *3 (Queens Cnty. Sup. Ct. Apr. 20, 2021). But neither of these decisions make any mention of *Vega* whatsoever – it seems that they were unaware of the First Department's decision and its considerable progeny discussed above. Worse, the *Grant* decision was issued by a State Supreme Court, which is unquestionably bound by the First Department's holding and is not empowered to hold otherwise even if it did disagree with *Vega*'s holding. *Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rts. Project, Inc. ex rel. Hercules & Leo v. Stanley*, 16 N.Y.S.3d 898, 916 (N.Y. Sup. Ct. 2015) ("State trial courts must follow a higher court's existing precedent 'even though they may disagree.'") (citing *People v. Rivera*, 5 N.Y.3d 61, 72 n. 2 (2005)); *see also id.* ("a lower court is bound by an apposite decision of an Appellate Division not within its judicial department when there is no decision on point from the Court of Appeals or the Appellate Division within its judicial department"). Unfortunately, because both courts dismissed the claims at issue under alternative grounds as well, it is unlikely that these errors will be corrected. But that does not make them right. Defendant's argument that this Court should disregard *Vega*, in contravention of its own prior decisions and those of every single court to consider this issue, based on the opinions of two non-binding decisions that failed to even consider *Vega* makes no sense and is plainly unpersuasive.

## C. The New York State Department Of Labor Has Stated That A Violation Of NYLL § 191 Gives Rise To A Private Right Of Action

The Department of Labor ("DOL") has also held that a private right of action exists. The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute." *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988).

In an October 28, 2010 opinion letter, the Department of Labor reiterated that NYLL § 191 is enforceable by a private right of action. *See* RO-10-0003.[3] In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that while an employer could require an employee to sign off on the time sheet, the employee's signature "neither relieves the employer of its obligations under []Section [191], <u>nor does it prevent an employee from filing a complaint with this Department or bringing an action for a violation of [NYLL § 191.]</u>" *Id.* (emphasis added). Thus, it is the view of New York's department of Labor that employees are empowered to bring private suits for violations of NYLL § 191.

Defendant argues that that the DOL does not believe that a private right of action exists because its "Complaint form lists frequency-of-pay concerns as a form of 'non-wage complaint … whereas actual wage underpayment claims are dealt with in an entirely different section of the Complaint Form." MTD at 12-13. That is a silly argument. The organization of a claim form is neither an opinion nor interpretation. The DOL has a means of expressing legal opinions: in opinion letters. And when it addressed this issue in an opinion letter, it stated that a private right of action exists.

---

[3] *See* Kopel Decl., Exhibit 3.

Moreover, the fact that a late payment is indistinguishable from an underpayment is axiomatic.  The Ninth Circuit addressed this issue in the FLSA context in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993).  There, the Ninth Circuit held explained, "[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction. We cannot come up with one either… Any kind of sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'"  *Id.* at 1539-1540.

Other courts have also recognized the impossibility of distinguishing between the concepts. For example, in *Brooks v. Village of Ridgefield Park*, 978 F. Supp. 613, 617 (D.N.J. 1997), the plaintiff was a K-9 officer in the Village of Ridgefield Police department who challenged the Village's schedule of paying officers' overtime compensation monthly.  There was no dispute that the officers had agreed to this payment schedule in their collective bargaining agreement, *see id*. at 617, yet the plaintiff alleged that the delayed payment of overtime wages violated the FLSA. The Court granted summary judgment for the Plaintiff, noting:

> [if] an employer is not obligated to compensate an employee for overtime worked during a given week on the regular pay day for that week, this would lead to an ambiguous standard for determining when wages became 'unpaid' under the statute. <u>Employers would then be permitted to withhold overtime compensation for some undefined period of time without incurring any legal liability and employees would be left with no recourse during this delay.</u> Allowing such a delay in the payment of wages would run counter to the primary purpose of the FLSA to "protect certain groups . . . from substandard wages and excessive hours."

*Id*. at 618 (emphasis added, citing *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  On appeal, the Third Circuit agreed that the failure to pay overtime "on the regular pay day for the period in which such workweek ends" violates the FLSA.  *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 140 (3d Cir. 1999).

Similarly, in *Biggs*, the plaintiffs were a group of state employees who sued for a two-week delay in the payment of wages caused by a budget impasse. *Biggs*, 1 F.3d at 1539-40. The Ninth Circuit reasoned that wages become "unpaid" if they are not paid when due:

> If a payday has passed without payment, the employer cannot have met his obligation to "pay". . . Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless. The statute must therefore contemplate a time at which § 206 is violated, or, put another way, when minimum wages become "unpaid." "Unpaid minimum wages" have to be "unpaid" as of some distinct point, otherwise courts could not compute either the amount of wages which are unpaid, or the additional "equal" amount of liquidated damages.

*Id.* In short, a violation of the FLSA occurs when an employee does not receive overtime on his or her regular payday. *Martin*, 117 Fed. Cl. at 620. "To hold otherwise would create sufficient uncertainty as to when a violation occurs, and statutory enforcement would prove unworkable." *Id.*

### D. NYLL § 191 Provides an Implied Private Right of Action

Defendant further argues that the Court should depart from *Vega* because "the First Department's conclusion in *Vega* that a private right of action can be implied under NYLL Section 191 cannot be readily reconciled with the Court of Appeals' recent decision in *Konkur v. Utica Academy of Science Charter School*." MTD at 13. Defendant neglects to mention, however, that this exact argument—along with its reliance on *Konkur*—has been squarely rejected in the NYLL § 191 context by *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) and *Elhassa v. Hallmark Aviation Servs., L.P.*, 2022 WL 563264 (S.D.N.Y. Feb. 24, 2022).

Specifically, the Court in *Mabe* held as follows:

> *Konkur* did not address whether NYLL §§ 191 and 198(1-a) provide a private right of action for untimely paid wages, but rather addressed whether there was an implied right of action under NYLL § 198-b - a statute that does not have an express private right of

> action. Section 198(1-a), by contrast, provides for an express private
> right of action for underpayment of wages. *See* NYLL 198(1-a) …
> As the Court of Appeals stated in *Konkur*, "[w]here the legislature
> intended for an article 6 provision to be enforced individually, it
> expressly provided a private right of action." *Konkur*, 2022 WL
> 397774, at *3. Under *Vega*, this is the situation here with Section
> 198(1–a) for a Section 191(a)(1) violation claim. *See Vega*, 175
> A.D.3d                          at                          1146.

*Mabe*, 2022 WL 874311, at *6 (citing *Elhassa*, 2022 WL 563264, at *2 ("[T]he question

in *Konkur* had to do with the implication of a private right of action [under Labor Law § 198–b,

which prohibits wage kickbacks]. *Vega* rested on a different ground. *Vega* ... concluded that the

NYLL [§ 198 (1-a)] 'expressly provides a private right of action for [the late payment of wages].'")

(quoting *Vega*, 107 N.Y.S.3d at 288)).

Accordingly, Defendant's argument is without merit and should be rejected. *See Sorto*,

2020 WL 8413553, at *2 (Seybert, J.), *report and recommendation adopted*, 2020 WL 7693108

(E.D.N.Y. Dec. 28, 2020) ("Moreover, as the courts in *Vega* and *Scott* recognized, this conclusion

is consistent with an implied private of action under section 191, even if the statute may not fairly

be read to expressly provide one."); *Caul*, 2021 WL 4407856, at *3 ("Defendants contend that the

statute already provides an administrative mechanism to enforce Section 191 violations, the

legislative history reflects the administrative nature of the Section 191 scheme, and the purpose

of Section 191 is 'to ensure that employers make payroll payments at all.' But *Vega* addressed

those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees

who are 'dependent upon their wages for sustenance' and deter labor law violations. And contrary

to defendants' emphasis on administrative enforcement, Section 198 lets an individual sue even

where the administrator declines.") (internal citations omitted).

### E.    Defendant's Constitutionality Argument Is Wrong

Defendant argues that the Court should "revisit its reliance on *Vega*," because Defendant ultimately intends to argue that the damages in this case violate "Due Process and the Eighth Amendment's Excessive Fines Clause."  MTD at 14.  Defendant is wrong.  Any argument about the constitutionality of damages (especially on a class-wide basis) at this point is speculative and premature.  More importantly, even if the Court agreed that damages were excessive, the remedy would be to reduce damages at the judgment stage, not give Defendant a get-out-of-jail-free card for violating NYLL § 191.  Defendant's argument is unsupported by any authority whatsoever.

In fact, this exact argument was recently rejected by Judge Kovner in *Rodrigue v. Lowes Home Ctrs., LLC*, 2021 WL 3848268, at *6 (E.D.N.Y. Aug. 27, 2021).  There, the court held:

> [A] challenge of this sort is premature. At this stage of the case, there has been no liquidated damages award, and there is no record on which to assess whether an award would be excessive in light of "the degree of reprehensibility of the defendant's misconduct," "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award," and "the difference between the punitive damages awarded ... and the civil penalties authorized or imposed in comparable cases.'" *Thomas v. iStar Financial, Inc.*, 652 F.3d 141, 149 (2d Cir. 2010) (describing the Supreme Court's three "'guideposts' for courts reviewing [punitive damages] awards").
>
> Even if defendants were correct that liquidated damages equal to "the amount of all late payments" would violate the Due Process Clause, defendants have offered no reason why they would be entitled to dismissal of plaintiff's claim—rather than a reduction in damages. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 429 (2003) (concluding that punitive damages award was constitutionally excessive and remanding case for "[t]he proper calculation of punitive damages" in light of constitutional limits); *BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 585-86 (1996) (remanding case to state court to determine "whether the appropriate remedy" for an excessive award is "a new trial or merely an independent determination by the Alabama Supreme Court" of the appropriate amount of punitive damages).  Defendants' motion to dismiss plaintiff's claim for untimely wage payments is therefore denied.

Judge Kovner was right, and this Court should adopt the same position. The Second Circuit has explained that any arguments about whether damages are constitutionally excessive "remain hypothetical" where "[t]here has been no class certification motion filed nor any actual evidence that raises a reasonable possibility that principles of due process may restrict an ultimate damages award" and courts should therefore "decline to consider what limits the due process clause may impose" at such an early stage. *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2nd Cir. 2003). Indeed, courts have held that "challenges under the Excessive Fines Clause are ... generally not ripe until the actual, or impending, imposition of the challenged fine." *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 195 (S.D.N.Y. 2019).

Moreover, Defendant's suggestion that the Court should absolve it from liability simply because it intends to make this argument down the line makes no sense. *See Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768, 778 (N.D. Ill. 2008) ("[I]f Banner were able to show that the statutory damages are in fact so excessive as to be improper, the appropriate remedy would be a reduction of the aggregate damage award, not a dismissal of Centerline's claim.").

Defendant cites "the canon of constitutional avoidance, under which a court should construe an ambiguous statute to avoid constitutional problems if a viable alternative interpretation exists." *U.S. v. Awadellah*, 349 F.3d 42, 55 (2d Cir. 2003). But that is inapplicable. First, "the canon of constitutional avoidance ... has no application in the absence of statutory ambiguity." *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 134 (2002). Here, as discussed above, no such ambiguity exists. As Judge Kovner explained, "[t]here is not substantial ground for a difference of opinion as to the availability of a private right of action for delayed wage payments

under the NYLL." *Caul II*, 2021 WL 6805889, at *1.  Because there is no ambiguity, there is no basis to invoke the canon of constitutional avoidance.

Finally, even if there were statutory ambiguity, Defendant's argument would still not apply. That is because "the canon … applies only when there are serious concerns about the statute's constitutionality." *Harris v. U.S.*, 536 U.S. 545, 555 (2002) *overruled on other grounds by Alleyne v. U.S.*, 570 U.S. 99 (2013).  Here, Defendant does not even attempt to argue that there are any concerns about the statute's constitutionality.  Rather, it argues only that an award of liquidated damages would be unconstitutional, which would not give rise to a judicial invalidation of the entire statute.  Many other statutes call for an award of statutory and/or liquidated damages, and it is not uncommon for defendants to argue that those damages are excessive.[4]  But despite this common occurrence, Defendant cites no authority invoking constitutional avoidance on the basis of excessive damages, and Plaintiffs are aware of none.  This argument must therefore be rejected.

## III.    PLAINTIFF ROSARIO WILL DISMISS HIS CLAIM WITHOUT PREJUDICE

The Court need not rule on Defendant's motion to compel arbitration because Plaintiff Rosario will consent to dismissal of his claim against Defendant without prejudice.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

Dated:  April 18, 2022                                    Respectfully submitted,

By:     */s/ Yitzchak Kopel*
                Yitzchak Kopel

---

[4] To be clear, Defendant is wrong about the constitutionality of an award of liquidated damages in this case, and Plaintiff will oppose any motion to that effect at the appropriate time.

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiffs*