UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH ROSARIO, NOAH ZAHARIA, and OLIVIA SPELL, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  -against-<br><br>ICON BURGER ACQUISITION LLC d/b/a SMASHBURGER,<br><br>    Defendant. | Case No. 2:21-cv-04313-JS-ST |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Daniel Gomez-Sanchez
Matthew R. Capobianco
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747
dsgomez@littler.com
mcapobianco@littler.com
Tel: (631) 247-4700
Fax: (631) 824-9249
Attorneys for Defendant,
Icon Burger Acquisition LLC

**TABLE OF CONTENTS**

**PAGE**

I. PLAINTIFFS' ALLEGATIONS FAIL TO ESTABLISH THEY SUFFERED A CONCRETE AND PARTICULARIZED INJURY-IN-FACT .......................................... 1

II. THE LEGISLATURE'S INTENT IN PASSING NYLL § 191 IS IRRELEVANT ......... 5

III. PLAINTIFFS' REQUEST TO AMEND SHOULD BE DENIED .................................... 5

IV. NYLL §§ 191 AND 198 DO NOT PROVIDE PLAINTIFFS WITH A PRIVATE CAUSE OF ACTION ...................................................................................................... 6

V. THE COURT SHOULD COMPEL PLAINTIFF ROSARIO TO INDIVIDUALLY ARBITRATE HIS CLAIM ................................................................. 10

VI. CONCLUSION................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adler v. Penn Credit Corp.*,
  No. 19-cv-7084, 2022 WL 744031 (S.D.N.Y. Mar. 11, 2022)..................................................4

*Barenboim v. Starbucks Corp.*,
  21 N.Y.3d 460 (N.Y. 2013) ......................................................................................................8

*Caul v. Petco Animal Supplies, Inc.*,
  No. 20-cv-3534, 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021)................................................4

*Chao v. Russell P. Le Frois Builder*,
  *291 F.3d 219* (2d Cir. 2009) ....................................................................................................6

*Ciccone v. Cavalry Portfolio Servs.*,
  No. 21-cv-2428, 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) (Seybert, J.)...........................1

*Diebold, Inc. v. The Comm'r of Labor*,
  No. PR-66-93 (N.Y. Indus. Bd. of Appeals, entered Jan. 25, 1994 ..........................................3

*Grant v. Global Aircraft Dispatch*,
  No. 2021-03202 (2d Dep't, appeal filed May 5, 2021) ............................................................7

*Grant v. Global Aircraft Dispatch*,
  No. 720074/2019, 2021 WL 6777500 (New York Cnty Sup. Ct. Apr. 20,
  2021) ........................................................................................................................................7

*Green v. Forster & Garbus*,
  No. 19-cv-3550, 2022 WL 939743 (E.D.N.Y. Mar. 29, 2022) (Seybert, J.) ................... passim

*Harty v. West Point Realty*,
  28 F.4th 435 (2d Cir. 2022) ......................................................................................................3

*Konkur v. Utica Academy of Science Charter School*,
  38 N.Y.3d 38 (2022) ............................................................................................................8, 9

*Maddox v. Bank of New York Mellon Trust Company*,
  19 F.4th 58 (2d Cir. 2021) ............................................................................................. passim

*McLeod v. Verizon New York*,
  995 F. Supp. 2d 134 (E.D.N.Y. 2014) ...................................................................................10

*NDI Video v. The Comm'r of Labor*,
   No. PR-19-94 (N.Y. Indus. Bd. of Appeals, entered Aug. 5, 1994) ......................................... 3

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ............................................................................................................... 4

*of Hercules and Leo v. Stanley*,
   16 N.Y.S.3d 898 (N.Y. Cnty. Sup. Ct. 2015) ........................................................................ 7

*Raines v. Byrd*,
   521 U.S. 811 (1997) ............................................................................................................... 5

*Reinschmidt v. Exigence LLC*,
   No. 13-cv-1153, 2014 WL 2047700 (W.D.N.Y. May 19, 2014) ........................................... 6

*Schmelczer v. Penn Credit Corp.*,
   No. 20-cv-2380, 2022 WL 862254 (S.D.N.Y. Mar. 23, 2020) ............................................... 2

*Sevilla v. House of Salads One*,
   No. 20-cv-6072, 2022 WL 954740 (E.D.N.Y. Mar. 30, 2022) .............................................. 2

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................................... 5

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ............................................................................................... 1, 2, 4, 5

*Vega v. CM & Associates Construction Management, LLC*,
   107 N.Y.S.3d 286 (1st Dep't 2019) ............................................................................... 6, 7, 8

*Wan v. Trans Union*,
   No. 22-cv-115, 2022 WL 955290 (E.D.N.Y. Mar. 30, 2022) ................................................ 2

*Weisz v. Sarma Collections*,
   No. 21-cv-6230, 2022 WL 1173822 (S.D.N.Y. Apr. 20, 2022) ............................................. 2

*Wolkenfeld v. Portfolio Recovery Assocs.*,
   No. 22-cv-1156, 2022 WL 1124828 (E.D.N.Y. Apr. 14, 2022) ............................................. 2

**Statutes**

NYLL § 191 ................................................................................................................... *passim*

NYLL §§ 193 ......................................................................................................................... 8

NYLL § 198 ................................................................................................................ 6, 7, 8, 9

NYLL § 218 ....................................................................................................................... 7, 8

**Rules and Regulations**

FED. R. CIV. P. 12(h)(3) ..................................................................................................5, 6

FED. R. CIV. P. 82..............................................................................................................6

Defendant Icon Burger Acquisition LLC ("Smashburger") respectfully submits this reply in further support of its pending motion to dismiss the Second Amended Complaint.

## I. PLAINTIFFS' ALLEGATIONS FAIL TO ESTABLISH THEY SUFFERED A CONCRETE AND PARTICULARIZED INJURY-IN-FACT

The Court previously cautioned Plaintiffs that alleging a NYLL § 191 violation alone was not enough to satisfy Article III's demands. Following *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) and *Maddox v. Bank of New York Mellon Trust Company*, 19 F.4th 58 (2d Cir. 2021), the Court explained Plaintiffs were required to offer additional factual allegations explaining *how* being fully paid on a biweekly basis caused them to "fore[go] the opportunity to invest or otherwise use the money to which" they claim they should have been paid weekly (Doc. 24 at 8-9).[1]

Instead, Plaintiffs amended their complaint to simply allege, in threadbare fashion, that they were "injured" by being "temporarily deprived of money owed to" each of them, such that they each "could not invest, earn interest on, or otherwise use these monies" (Doc. 26 at ¶¶ 11-13). But as Smashburger explained in its opening motion, this recital was not enough to satisfy Article III because such speculative and hypothetical claims only suggest that had Plaintiffs been paid weekly, instead of biweekly, "they might have invested the monies, or maybe spent those funds in varied ways, or maybe [have] do[ne] nothing at all with the funds" (Doc. 32 at 15). In response, Plaintiffs—relying almost entirely on out-of-circuit authority that predates *TransUnion* and *Maddox*—surprisingly contend they are *not* required to explain what they would have done with their wages, and instead need only allege that "they could not use or invest th[ose] delayed funds" for a week (Doc. 35 at 9).[2]

---

[1] Page references herein are to those assigned by the Pacer filing system, which may differ from a document's originally generated page numbering format.

[2] This Court has cautioned plaintiffs against over-reliance on "pre-*TransUnion* cases," *Green v. Forster & Garbus*, No. 19-cv-3550, 2022 WL 939743, at *3 (E.D.N.Y. Mar. 29, 2022) (Seybert, J.), given how *TransUnion* "substantially and materially changed a district court's analysis of Article III standing in statutory" violation cases. *Ciccone v.*

1

Plaintiffs' argument misses both the clarity and point of *TransUnion*, *Maddox* and the Court's January 2022 directive. In summarizing the changes brought about by *TransUnion* and its progeny, the Southern District of New York recently explained:

> Courts may not assume that the existence of a statutory prohibition or obligation automatically elevates violation thereof to a harm that is concrete under Article III. For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant's violation of … law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of … law. To establish standing, a plaintiff must not only show that the defendant's conduct violated a statute, but that the plaintiff was *concretely harmed by* a defendant's statutory violation.

*Weisz v. Sarma Collections*, No. 21-cv-6230, 2022 WL 1173822, at *2 (S.D.N.Y. Apr. 20, 2022) (emphasis in original, internal quotations omitted). Similarly, this Court has held that "it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more *searching* analysis of the injury" supposedly caused by that statutory violation. *Green*, 2022 WL 939743, at *3 (emphasis added); *accord Wan v. Trans Union*, No. 22-cv-115, 2022 WL 955290, at *1 (E.D.N.Y. Mar. 30, 2022) (allegation of a FCRA statutory violation, unaccompanied by allegations of how that violation "resulted in a materialized injury, … is insufficient to confer standing"); *Sevilla v. House of Salads One*, No. 20-cv-6072, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022) (same, with respect to NYLL-based claims); *Schmelczer v. Penn Credit Corp.*, No. 20-cv-2380, 2022 WL 862254, at *7 (S.D.N.Y. Mar. 23, 2020) (same, with respect to FDCPA-based claims).

Plaintiffs' refusal to provide such detail makes clear they cannot plausibly allege they have

---

*Cavalry Portfolio Servs.*, No. 21-cv-2428, 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (Seybert, J.). As the Court recently explained, "[p]rior to *TransUnion*, many courts assumed that, when Congress created a statutory cause of action, a violation of that statute was sufficient to create an injury-in-fact … In *TransUnion*, however, the Supreme Court made clear that … an injury in law is not an injury in fact," and "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue … in federal court." *Wolkenfeld v. Portfolio Recovery Assocs.*, No. 22-cv-1156, 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (emphasis in original).

standing. After all, the only reason Plaintiffs could have been temporarily "deprived of funds" is based upon their belief that they should have been paid on a weekly, instead of biweekly, basis.

But even assuming *arguendo* that they should have been paid weekly,[3] any "deprivation of funds" caused by Smashburger's practice of paying Plaintiffs on a biweekly basis is nothing more than the product of the alleged statutory violation itself. In other words, absent NYLL § 191's weekly pay requirement for those qualifying as manual workers, Plaintiffs could not claim to have been temporarily deprived of any wages at all. What Plaintiffs failed to do in their operative complaint, and contend they have no need to do in their opposition, is explain *how* such a temporary "deprivation" *manifested in some concrete, personalized and resulting injury* to them. This is a fatal omission, as the Second Circuit, in accordance with Supreme Court precedent, has explained "plaintiffs cannot establish Article III standing by relying entirely on a statutory violation," but must instead offer allegations of how that alleged violation resulted in "concrete harm." *Maddox*, 19 F.4th at 64; *accord Green*, 2022 WL 939743, at *4 (dismissing FDCPA action because, while plaintiff alleged a statutory violation, he failed to provide "any indication of the [resulting] concrete injury in fact that he suffered").

At bottom, alleging the "deprivation" of some statutory right—whether it be weekly instead of biweekly wages, or ADA-compliant website disclosures, or FDCPA-compliant debt communications—cannot alone satisfy Article III's demands absent accompanying allegations "show[ing] a current or past harm *beyond the statutory violation itself.*" *Harty v. West Point*

---

[3] Smashburger disputes that Plaintiffs are manual workers under NYLL § 191. For example, Plaintiff Zaharia alleges she worked "as a 'front of house' employee" (Doc. 26 at ¶ 12), but the New York Industrial Board of Appeals has held that cashiers and other "front of house" staff do not qualify as manual workers. *See* Resolution of Decision at 4, *NDI Video v. The Comm'r of Labor*, No. PR-19-94 (N.Y. Indus. Bd. of Appeals, entered Aug. 5, 1994) (a true and correct copy of which is attached as **Exhibit A**). Plaintiff Spell alleges she was employed as a "shift manager" (Doc. 26 at ¶ 13), but the New York Industrial Board of Appeals has concluded that workers employed in an administrative capacity also cannot be categorized as manual workers. *See* Resolution of Decision at 3, *Diebold, Inc. v. The Comm'r of Labor*, No. PR-66-93 (N.Y. Indus. Bd. of Appeals, entered Jan. 25, 1994) (a true and correct copy of which is attached as **Exhibit B**).

*Realty*, 28 F.4th 435, 443 (2d Cir. 2022) (emphasis added). This is because a plaintiffs' "exposure to illegal conduct does not" amount to an injury-in-fact. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Such exposure simply raises the possibility of injury, not that any injury actually "materialized" in some concrete and personalized way. *Maddox*, 19 F.4th at 65. Both *TransUnion* and *Maddox* "demand concrete examples of [the resulting] harm," even in cases where a plaintiff is claiming lost use of money-type injuries. *Adler v. Penn Credit Corp.*, No. 19-cv-7084, 2022 WL 744031, at 7 (S.D.N.Y. Mar. 11, 2022); *accord Maddox*, 19 F.4th at 64, n.2 ("[T]he type of harm that a statute protects against is of little (or no) import" to the Article III analysis because "plaintiffs must show that the statutory violation caused them a concrete harm, regardless of [the nature of] the statutory rights" at issue).[4]

This Court cannot entertain Plaintiffs' claim absent allegations that they suffered some concrete, particularized and personalized injury from being fully paid biweekly, instead of weekly. *Green*, 2022 WL 939743, at *1-2. Simply alleging that by being fully paid biweekly, they were temporarily deprived of funds is not enough, because doing so fails to explain how that deprivation

---

[4] Plaintiffs gain little by relying on *Caul v. Petco Animal Supplies, Inc.*, No. 20-cv-3534, 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021), which in fact is the *only* post-*TransUnion* decision from within the Second Circuit that Plaintiffs rely upon in the Article III argument (Doc. 35 at 9-10). Although Plaintiffs contend that *Caul* supports their claim that they need only allege that they were temporarily deprived of funds by being paid on a biweekly instead of weekly basis (Doc. 35 at 9-10), this Court has already refused to construe *Caul* in such a manner by making clear that under applicable Second Circuit precedent, a plaintiff "most plead enough facts to make it plausible" that a NYLL § 191 frequency of pay violation not only occurred, but also manifested in some concrete and particularized injury to the plaintiff apart and beyond the pay frequency violation itself (Doc. 24 at 7-8).

Moreover, Plaintiffs' contention that *TransUnion* and *Maddox* supposedly did not involve financial harms (Doc. 35 at 13) is equally misplaced. The violations in *TransUnion* and *Maddox* very well *could have* led to monetary injuries to some individuals, just not for the plaintiffs whose claims were dismissed for lack of standing. The *TransUnion* court found "the 6,332 plaintiffs did not demonstrate that the risk of future harm materialized—that is, that the inaccurate OFAC alerts in their internal TransUnion credit files … caused a denial of credit." 141 S. Ct. at 2211. The *Maddox* court identified even more potential monetary harms that the plaintiffs did not (or could not) allege: "an actionable cloud on title to the property securing the discharged mortgage debt," 19 F.4th at 64; "a duplicative filing fee," *id.*; and difficulty "obtain[ing future] financing," *id.* at 65. As in this case, the *TransUnion* and *Maddox* plaintiffs could have alleged specific monetary harms resulting from them being paid biweekly instead of weekly, had they actually suffered such harms, but instead they pleaded conclusory allegations regarding perceived statutory violations alone unaccompanied by allegations of how those violations manifested in concrete, particularized and personalized injuries to themselves.

manifested in some actual and concrete harm. Given Plaintiffs' unwillingness to offer such allegations, "dismissal is mandatory" (*Id.* at *1), although "state court [always] remains an option for" Plaintiffs to pursue their claims. *Maddox,* 19 F.4th at 66 (bracketed text added).

## II.   THE LEGISLATURE'S INTENT IN PASSING NYLL § 191 IS IRRELEVANT

Plaintiffs claim the New York Legislature's "intent behind NYLL § 191" supports their argument that they need not allege any personalized and particularized injury apart from Smashburger's alleged frequency of pay violations (Doc. 35 at 14). But as this Court recently explained, a legislative body's "creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *Green*, 2022 WL 939743, at *3 (quotation omitted). Accordingly, while a legislative body "may enact legal prohibitions and obligations," "an injury in law is not an injury in fact." *TransUnion*, 141 S. Ct. at 2205. This is because no legislature—state or federal—can grant jurisdiction on more generous terms than Article III allows. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[I]njury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."); *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.").

## III.   PLAINTIFFS' REQUEST TO AMEND SHOULD BE DENIED

Plaintiffs alternatively ask that if the Court concludes they have failed to sufficiently allege standing, then they should be permitted to amend their complaint (Doc. 35 at 15). But Plaintiffs have already amended their complaint twice, including once in response to the Court's January 2022 directive (*see* Docs. 1, 10, 26). Having failed three times already to plausibly allege what particularized and concrete injury they suffered from being fully paid biweekly, Plaintiffs are due no fourth opportunity. *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it

5

lacks subject-matter jurisdiction, the court must dismiss the action."). To use Rule 15 to try for a fourth time "to *establish* jurisdiction would be to bootstrap jurisdiction into existence," even though it is "axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction." *Chao v. Russell P. Le Frois Builder, 291 F.3d 219, 229* (2d Cir. 2009) (emphasis in original); *accord* FED. R. CIV. P. 82 ("These rules do not extend or limit the jurisdiction of federal courts"); *Reinschmidt v. Exigence LLC*, No. 13-cv-1153, 2014 WL 2047700, at *3 (W.D.N.Y. May 19, 2014) (in refusing to allow plaintiff to use Rule 21 to dismiss certain defendants to create subject matter jurisdiction over the remaining defendants, noting "I fail to see how I can apply Rule 21 in this case without ignoring Rule 82 … and violating Rule 12(h)(3)").

## IV. NYLL §§ 191 AND 198 DO NOT PROVIDE PLAINTIFFS WITH A PRIVATE CAUSE OF ACTION

Smashburger separately argued in its opening motion that the Court should "revisit its prior decision regarding the availability of a private right of action" under NYLL § 191 and dismiss Plaintiffs' complaint (Doc. 32 at 23). After all, this is *not* a case about unpaid or underpaid wages, as Plaintiffs do not claim any wages are owed. The question is whether § 191 provides Plaintiffs with a private right of action to complain about being fully paid biweekly, instead of weekly.

In response, Plaintiffs catalogue various decisions adopting the First Department's decision in *Vega v. CM & Associates Construction Management, LLC*, 107 N.Y.S.3d 286 (1st Dep't 2019), wherein the court concluded that the biweekly payment of wages to manual workers constitute an "underpayment" within the meaning of NYLL § 198, thereby giving rise to either an express or implied private right of action (Doc. 35 at 16-18). However, as Smashburger previously explained, "*Vega* has not been universally adopted or applied by New York's courts" (Doc. 32 at 20).

Plaintiffs counter that such decisions are erroneous, as courts—state and federal—are "unquestionably bound by the First Department's holding" in *Vega* (Doc. 35 at 18). But that

6

overstates the law: state trial courts outside of the First Department are not bound to follow its decisions when there are conflicting decisions by other appellate courts. *In the Matter of a Proceeding Under Article 70 of CPLR for a Writ of Habeas Corpus, The Nonhuman Rights Project, on behalf of Hercules and Leo v. Stanley*, 16 N.Y.S.3d 898, 916 (N.Y. Cnty. Sup. Ct. 2015). And several New York courts have so concluded, rejecting *Vega's* notion that a private right of action exists for fully paying manual workers on a biweekly basis. For example, in *Grant v. Global Aircraft Dispatch*, No. 720074/2019, 2021 WL 6777500 (New York Cnty Sup. Ct. Apr. 20, 2021), the court dismissed claims like those here, "seeking liquidated damages [under NYLL § 198] on behalf of" a putative class "for defendant's alleged failure to [the class members] on a weekly basis." *Id.* at *4. In so doing, the *Grant* court rejected the notion that "the payment of wages in full, albeit on a bi-weekly basis," constitutes an "underpayment" within the meaning of § 198, and thus the plaintiffs did "not have a private right of action under NYLL §§ 191(1)(a)(i) and 198(1-a) for a frequency of pay violation," based in part upon decisions of the Second Department. *Id.* at *3. Plaintiffs do not meaningfully discuss *Grant*. Instead, they simply claim it was erroneously decided, and should be ignored as "it is unlikely" to be reviewed on appeal (Doc. 35 at 18). However, *Grant* is presently pending before the Second Department, and a decision as to whether the Second Department agrees with *Vega* is expected within the year. *Grant v. Global Aircraft Dispatch*, No. 2021-03202 (2d Dep't, appeal filed May 5, 2021).

The *Grant* court's rationale for rejecting *Vega's* reasoning deserves the Court's consideration. Relying on prior Second Department decisions, the *Grant* court concluded that "the failure to timely pay wages" does not constitute a wage underpayment. 2021 WL 6777500, at *3. Such reasoning mirrors how the Department of Labor "(DOL)" construes frequency of pay violations. NYLL § 218 and the DOL classify Labor Law violations in two different groups: (1)

wage claims, which include violations for failing to pay "wages, benefits, or wage supplements found to be due;" and (2) non-wage claims, which are violations "for a reason *other than* the employer's failure to pay wages." NYLL § 218(1) (emphasis added). "Non-wage" claims expressly include those involving the "timely payment of wages." *See* https://dol.ny.gov/unpaidwithheld-wages-and-wage-supplements (last visited Apr. 25, 2022). For this reason, the DOL's own Labor Standards Complaint form does not treat a frequency-of-pay claim was an unpaid/underpaid wages claim (Doc. 32 at 20-21). While Plaintiffs characterize references to such policies and forms as "silly" (Doc. 35 at 19), the DOL's approach to these matters is entitled to judicial deference. *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 470-71 (N.Y. 2013) ("We have recognized that the DOL's interpretation of a statute it is charged with enforcing is entitled to deference." (partial quotation omitted).[5] Such policies and forms also demonstrate that the DOL does not construe frequency-of-pay claims as unpaid/underpaid wage issues, in direct contradiction to *Vega*. This also comports with the most recent 2021 amendment of NYLL § 198, which clarifies that NYLL §§ 193 and 198—and not NYLL § 191—provide the substantive basis for unpaid/underpaid wage claims—a development that cannot be squared with *Vega's* rationale. *See* 2021 Sess. Law News of N.Y. Ch. 397 (S. 858), NY Legis. 397 (2021).

Moreover, while Plaintiffs contend the Court of Appeal's decision in *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022), does not dispel the notion that a private right of action may be *implied* under NYLL § 191 (Doc. 35 at 21-22), Plaintiffs ignore the breadth of the Court of Appeal's reasoning. In *Konkur*, the Court of Appeals acknowledged that the

---

[5] Plaintiffs' suggestion that the DOL's October 28 ,2010 opinion letter recognizes that a private right of action exists for frequency-of-pay violations is disingenuous and misleading (Doc. 35 at 13). That opinion concerns where an employer can require an employee to "sign off" on his or her time entries. The DOL's acknowledgment that a signed timesheet does not "prevent an employee from filing a complaint" does not mean or equate to recognition that a private right of action exists under NYLL § 191 for frequency-of-pay violations. And Plaintiffs' strained construction of the opinion letter simply cannot be reconciled with the DOL's public policies or forms, described *supra*.

8

Legislature "has both the right and the authority to select the methods to be used in effectuating its goals," and in light of the comprehensive nature of Article 6 (including § 198), "[w]here the Legislature intended for *an Article 6 provision* to be enforced individually, it [has consistently] expressly provided a private right of action," thereby dispelling the notion that private rights of action can also be inferred under Article 6's terms. 31 N.Y.3d at 42, 44 (emphasis added). As such, Plaintiffs' suggestion that *Konkur* does not apply here cannot be reconciled with *Konkur* itself. After all, if no private right of action can be implied for an employee to complain that his employer required wage kickbacks (resulting in him being paid less than due), then how can one be implied for an employee who is fully paid on a biweekly basis (if that too, under Plaintiffs' theory, constitutes an "underpayment")?

Moreover, Plaintiffs apparently miss the point of Smashburger's arguments regarding the Due Process and Eighth Amendment concerns associated with continuing to construe NYLL §§ 191 and 198 as either expressly or impliedly creating a private right of action. Contrary to Plaintiffs' belief that Smashburger is seeking to dismiss their claim based on these grounds (Doc. 35 at 23-25), the whole point of the argument is to demonstrate the fallacy and danger associated with continuing to recognize a private right of action that does not expressly exist under NYLL §§ 191 and 198. After all, the damages Plaintiffs seek here are NYLL § 198 liquidated damages (Doc. 26 at ¶ 23), but they claim no wages are due them. Instead, they claim by being paid biweekly, they suffered only a "time value of" money injury (*Id.* at ¶¶ 11-13). But § 198 liquidated damages are measured based on the "total amount of the wages found to be due" (NYLL § 198(1-a)), and not based on lost interest associated with delayed payments. Accordingly, any construction of §§ 191 and 198 that would allow them to privately pursue their claims, and recover liquidated damages equal to half their pay over the last six years, all from being fully paid on a biweekly

9

basis, would bear no rationale or proportional relation to their claimed "time value of" money theory of injury (Doc. 32 at 22-23)—a problem carrying serious Constitutional concerns and which only arises from Plaintiffs' strained construction of NYLL §§ 191 and 198 themselves.

## V. THE COURT SHOULD COMPEL PLAINTIFF ROSARIO TO INDIVIDUALLY ARBITRATE HIS CLAIM

In response to Smashburger's argument that Plaintiff Rosario must individually arbitrate his claim (Doc. 32 at 23-32), Plaintiffs contend the Court need not address that issue because they "consent to [the] dismissal of his claim" (Doc. 35 at 25). However, Plaintiffs have yet to move to dismiss his claim. As such, he remains a party and the Court should therefore enter an Order compelling him to individual arbitration. *See McLeod v. Verizon New York*, 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("[A] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.") (quotation omitted).

## VI. CONCLUSION

For the reasons set forth above and in Smashburger's opening motion, the Court should dismiss Plaintiffs' complaint. However, if the Court believes that dismissal is in appropriate at this time, the Court should still enter an Order compelling Plaintiff Rosario to individual arbitration.

Dated: May 3, 2022
Melville, New York

/s/ *Daniel Gomez-Sanchez*
Daniel Gomez-Sanchez
Matthew R. Capobianco
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747
dsgomez@littler.com
mcapobianco@littler.com
(631) 247-4700
Attorneys for Defendant,
Icon Burger Acquisition LLC

10